Gaston, Judge.
 

 — To enable us to judge of the correctness of the instruction which is called in question by the appellant, it is necessary to consider it in connection with the facts in controversy, and the testimony submitted to the jury, so far as we can collect them from the very compendious statement spread upon the record. The plaintiff claimed the horse in question, as having been purchased by him, through the agency of his witness Davis, while the defendant set up title thereto under a purchase at execution sale, as the property of the said Davis. We must understand, then, that the main question in dispute was, whether the original purchase was made by the witness for himself, or as the agent of the plaintiff. His testimony was positive, that he bought for the plaintiff, and he was not contradicted by opposing testimony, nor was his credit assailed, as having given a different account of the transaction, or as being a man of bad character. But there were circumstances attending the case, indicating a connection of the witness with the parties and with the subject-matter, which, the appellant insisted, impaired the credit due to his testimony. One of the parties was his alleged principal, and the other represented his judgment creditor. He was shown to be " involved.” When he made the purchase, he did not disclose his agency, according to his own statement. He paid an inconsiderable part of the price with money which he had collected for the plaintiff and gave his own note for the residue ; and when he delivered the horse to the plaintiff he was repaid the amount for which he had made himself personally liable. The weight of these circumstances might depend much on the degree of the witness's embarrassment, whether it reached insolvency, or but slightly affected his pecuniary credit: also on the fact, whether the execution upon, which the horse was sold, or any other execution was or was not hanging over him, at
 
 *596
 
 the time of the purchase or delivery of the horse; and also in the mode in which he was repaid for the advance of his credit, whether in money or in property, or in the discharge of an existing debt. Of the weight of these circumstances, we .have neither the means nor the authority to judge; but we cannot avoid seeing that they were circumstances fit to be considered and weighed by the jury.
 

 The judge charged, that if the witness was believed, the plaintiff was entitled to a verdict. The propriety of this part of the charge cannot be questioned. His Honor
 
 then
 
 instructed the jury, “ that when a witness was heard by a jury, who was neither impeached nor contradicted, whose story was credible, and in whose manner there was nothing to shake confidence, they were bound to believe, him.” Our difficulty lies in ascertaining from this language, what was the red
 
 information
 
 communicated to and received by the;jury. The term “ credible,” as applied to a witness, has a legal and well-defined meaning: it means, deserving of confidence. But as applied to a
 
 “
 
 story,” it may signify worthy of belief, or probable, only, or barely not incredible. It was not used by his Honor in the first sense, as it would be absurd and indecent to suppose, that the jury were instructed, that they were bound, to believe what they found worthy of their belief. We can scarcely understand.it to have been used in the second sense, as there was no reason to doubt, but that they would believe what had been testified by any witness, which had not been shown to be untrue, and which also appeared to them to be probable. A rule was laid down
 
 by the Court
 
 for the guidance
 
 of the jury,
 
 on the only material question, whether the witness should be believed or not; and we apprehend that by men of plain sense, it would be understood as importing, that
 
 in law,
 
 they were obliged to find a verdict conformable to his testimony, as he had not been ■ impeached or contradicted, unless his story was incredible, or his manner of testifying exceptionable. We are the more inclined to adopt this construction, because of the refusal to give the instruction prayed for, as to the lien of the
 
 fieri facias.
 
 If the circumstances before referred to were of
 
 any
 
 importance, then
 
 probably,
 
 
 *597
 
 (we cannot say
 
 positively,
 
 for the teste of the execution in question is not set forth in the case,) the instruction prayed for was relevant, as tending to show the pressure on the witness at the time of the transaction; but if they were utterly disregarded — if in law they could not operate against his positive, unimpeached, and uncontradictory testimony, then clearly, an inquiry into the lien of the executions, was altogether irrelevant.
 

 'Thus understanding the instructions, we are of opinion, that it is erroneous. The circumstances before referred to, may have weakened or destroyed the confidence of the jury in the veracity of the witness. Whether they ought to have this effect, it was for them and them only to decide. They are the competent and exclusive judges whether human testimony be inconsistent with the operation of those common principles which regulate human conduct. If thus believing, they do not in their consciences actually assent to it, there is no rule of law which compels them to yield to it an official faith. While the competency of witnesses and the relevancy of testimony are made the exclusive subjects of judicial cognisance, the credit of witnesses and the sufficiency of their testimony, are as exclusively matters for the determination of the jury. Thus it was by the common law. But it is, if possible, more emphatically so under .the statute, which declares it “ unlawful for a judge, in delivering a charge to the petit jury, to give an opinion whether a fact be fully or sufficiently proved,
 
 such matters being the. true office and province of the jury.”
 

 It is possible, notwithstanding our endeavours to ascertain the precise meaning of the charge, that we have misunderstood it. We have often cause to lament that the “ statements,” which accompany our transcripts áre rather rapid sketches than full representations of what occurred below, and of what we are called upon to revise. Extreme brevity can scarcely fail to produce obscurity.
 

 The judgment of the Superior Court of Haywood is to be reversed, with instructions to award a new trial.
 

 Per Curiam. Judgment reversed.