## JOAN E. BELK v. DR. DONALD C. SCHWEIZER

(Filed 26 August, 1966.)

**1. Trial § 35—**

In this action for malpractice, the sole expert testimony offered by plaintiff, apart from the adverse examination of defendant, was the deposition of a physician which was read to the jury. The court charged that the testimony of plaintiff's expert was difficult of comprehension. *Held:* Under the circumstances, the court's statement could be construed as a statement that the expert's testimony was so confused and vague that it was of little probative value, and the charge must be held prejudicial upon plaintiff's appeal from an adverse verdict, plaintiff having offered sufficient evidence to go to the jury upon the issues. G.S. 1-180.

**2. Physicians and Surgeons § 11—**

A physician who holds himself out as having special knowledge and skill in the treatment of a particular organ or disease is required to bring to the discharge of his duty to a patient employing him as such specialist, not merely the average degree of skill possessed by general practitioners, but that special degree of skill and knowledge ordinarily possessed by physicians similarly situated who devote special study and attention to the treatment of such organ or disease.

**3. Same—**

A qualified physician or surgeon is not an insurer and does not guarantee the correctness of his diagnosis, and ordinarily is not responsible for a mistake in diagnosis if he uses the requisite degree of skill and care.

**4. Physicians and Surgeons § 19— Evidence held sufficient to be submitted to the jury in this action for malpractice.**

Plaintiff's evidence tended to show that she put herself in the care of defendant, a specialist in the field of obstetrics and gynecology, that thereafter she suffered great pain and continual bleeding, that she asked defendant concerning the possibility of her having a tubular pregnancy, that upon her recurrent complaint of pain and bleeding, defendant by telephone diagnosed her illness as a kidney infection and proceeded to prescribe medicine therefor, that she contacted another physician who said she was in a serious condition and advised her to return to defendant, that plaintiff returned to the defendant who was unable to make a successful manual examination because of her pain, that her condition became progressively worse, and that she was later placed in a hospital and operated on for a ruptured tubular pregnancy. *Held:* The evidence is sufficient to be submitted to the jury in plaintiff's action for malpractice.

APPEAL by plaintiff from *Shaw, J.,* 25 October 1965 Civil Session of FORSYTH.

Civil action to recover damages allegedly caused by defendant's negligent failure to diagnose plaintiff's illness as tubular pregnancy and his failure to operate to remove it, thereby causing her to suffer great pain, and causing permanent injury to her female organs. The

case was tried upon issues raised by the pleadings and upon evidence offered by the parties. The jury found that plaintiff was not injured by negligence of defendant as alleged in the complaint.

From a judgment that plaintiff recover nothing from defendant, she appeals.

*White, Crumpler, Powell, Pfefferkorn and Green by Harrell Powell, Jr., William G. Pfefferkorn, and Edward R. Green for plaintiff appellant.*

*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson by R. M. Stockton, Jr., and W. F. Maready for defendant appellee.*

PARKER, C.J.   This is a summary of the allegations of fact in the complaint: Defendant, Dr. Donald C. Schweizer, is a practicing physician in the city of Greensboro, and holds himself out to be a specialist in the field of obstetrics and gynecology. Plaintiff, Joan E. Belk, a young married woman, visited defendant in his office on 19 May 1959 for medical services. At that time defendant, performing routine services for plaintiff, discovered she had a small ulcer at the mouth of her womb, and he treated her for this condition. On 9 November 1959 she went to defendant's office and explained to him that her last menstrual date was 4 August 1959. On 18 November 1959 she started a vaginal bleeding and called the defendant. Defendant was out of town on this occasion, and she was treated by his assistant. On 23 November 1959 plaintiff saw defendant in his office, and explained to him that she had been bleeding for approximately twelve days, had suffered great pain, was swollen, and had a temperature. On 27 November 1959 she was examined by defendant, at which time she was still bleeding. On 1 December 1959 she returned to defendant's office, and explained to him that she had had chills and fever the night before, was bleeding heavily and passing clots, was having severe cramps and pain, and was swollen. On 1 December 1959 defendant hospitalized her for an operation known as a D and C. (It was stipulated that a D and C is a dilatation and curettage.) She inquired of defendant as to the possibility of her having a tubular pregnancy. Defendant ran certain laboratory tests and told her that it could not be a tubular pregnancy. She remained in the hospital from 1 December 1959 to 3 December 1959. On 5 December 1959 she contacted defendant by telephone, stating to him that she had a temperature, was experiencing great pain in her back and side, was bleeding extensively, was swollen, and her complexion was discolored. The defendant did not come to see her nor did he request her to come to his office nor

go to the hospital. From the symptoms given to him on the telephone, without seeing her, he diagnosed her illness as a kidney infection and proceeded to prescribe medicine for a kidney infection. Plaintiff's husband on several occasions asked defendant what should be done for plaintiff, and defendant said he would hospitalize her if her husband thought it necessary. During this period defendant prescribed a large amount of the narcotic Demerol to relieve her pain. On 7 December 1959 she contacted another physician in Greensboro, Dr. Francis Berry, who came to see her, advised her she was in a very serious condition, and told her to return the next day to defendant. Plaintiff returned the following day to see the defendant, who attempted manually to examine her for a pelvic mass, but due to the pain this caused her, he was unable to make a successful examination. Defendant told her on this occasion that he did not know what was wrong with her, and to feel free to call another physician. Her condition became progressively worse, and she had a high 'temperature and was still bleeding. She contacted Dr. Francis Berry. She was placed in a hospital and was operated on by Dr. Berry for a ruptured tubular pregnancy. She remained in the hospital for twelve days.

Since that time she has been treated continuously by physicians and surgeons as a result of the negligence of defendant in failing to diagnose her illness as being caused by a tubular pregnancy. She avers and believes that if the tubular pregnancy had been diagnosed in apt time that these operations and expenses would not have been necessary.

The complaint alleges in substance that defendant was negligent in the following respects: (1) At all times complained of defendant did not possess the degree of professional learning, skill and ability which other physicians similarly situated ordinarily possessed, and he failed to exercise reasonable care and diligence in his application of his knowledge and skill to plaintiff's case; (2) he failed and neglected to use proper methods in his treatment of plaintiff from 9 November 1959 to 9 December 1959; (3) in examining plaintiff he did not use the care and methods used by physicians engaged in medical practice in Greensboro, and he negligently failed to correctly diagnose her condition; (4) he diagnosed plaintiff's illness as a kidney infection without seeing her, from a telephone examination; (5) he failed and refused to visit with plaintiff or to hospitalize her at a time when he knew or in the exercise of reasonable diligence should have known that her condition was serious and required immediate attention; (6) he was negligent in failing to notify plaintiff that the treatment which he was giv-

ing her had failed and to initiate other treatments and to attempt other diagnosis; (7) in the exercise of reasonable diligence he should have discovered that plaintiff had a tubular pregnancy and should have treated her for the same; (8) he was negligent in that he failed to hospitalize plaintiff and perform an exploratory operation in order to properly diagnose her condition, particularly in view of the fact that he was unable to examine her manually due to the fact that she was in a swollen condition and suffering extreme pain; (9) defendant knew or should have known that tubular pregnancy was very serious, would undoubtedly rupture and cause severe consequences to plaintiff, but nevertheless he treated plaintiff conservatively while not ruling out the possibility that plaintiff had a tubular pregnancy; and (10) other allegations of negligence of a similar nature.

Defendant in his answer admits that he saw plaintiff on the occasions alleged in her complaint, but he denies that he was guilty of negligence in any respect.

The parties offered evidence in support of the allegations of fact in their pleadings.

The deposition of Dr. Lonis L. Schurter, consisting of 36 pages in the record, was read to the jury by plaintiff. Plaintiff has no other medical evidence, except that it read to the jury an adverse examination of defendant. Defendant offered in his behalf the testimony of six doctors, which appears in the record on pages 134 through 345.

Plaintiff assigns as error the part of the charge of the court to the jury appearing in parentheses:

> "In response to a hypothetical question regarding the failure of Dr. Schweizer to do a culdoscopy or a cul-de-sac puncture on Mrs. Belk at the time of the D & C and while she was under anesthetic, Dr. Schurter stated that he had an opinion satisfactory to himself as to whether the treatment and examination was in accordance with approved medical practices in the community of Greensboro. (His answer is difficult of comprehension generally, because he does not say that he thinks at this stage a culdoscopic examination — no, his answer is difficult of comprehension generally, but he does say that he thinks at this stage a culdoscopic examination would be diagnostic, and that is the virtue, is the diagnostic examination.)"

Plaintiff further assigns as error the following part of the judge's charge:

"The defendant further contends that the evidence of Dr. Schurter, introduced by the plaintiff, is the evidence of a doctor who has never practiced in the specialty of obstetrics and gynecology exclusively; that Dr. Schurter's opinions are vague and indefinite; . . ."

Even if we concede that the second part of the charge challenged by plaintiff was a statement of a contention of the defendant rather than the expression of the statement of an opinion by the judge as to the credibility of Dr. Schurter's testimony, still it would seem that the statement of the court that Dr. Schurter's testimony was difficult of comprehension could be construed by the jury as a statement of an opinion by the court that Dr. Schurter's testimony in this respect was so confused and vague that it had little probative value, and that such expression of opinion by the court of Dr. Schurter's testimony was highly prejudicial, if not utterly disastrous, to plaintiff's case, particularly when Dr. Schurter was plaintiff's only medical witness other than the adverse examination of defendant, and was in many respects plaintiff's principal witness.

G.S. 1-180 reads: "No judge, in giving a charge to the petit jury, either in a civil or criminal action, shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury, but he shall declare and explain the law arising on the evidence given in the case. . . . " Moore, J., speaking for the Court, said in *Upchurch v. Funeral Home,* 263 N.C. 560, 140 S.E. 2d 17: "The slightest intimation from the judge as to the weight, importance or effect of the evidence has great weight with the jury, and, therefore, we must be careful to see that neither party is unduly prejudiced by any expression from the bench which is likely to prevent a fair and impartial trial."

The court in its charge may not intimate or express an opinion as to the facts, the weight of the evidence, or the credibility of the witnesses, either directly or indirectly, in any manner, and if the judge does intimate or express such an opinion, it is prejudicial. 4 Strong's N. C. Index, Trial § 35.

"The law imposes on the trial judge the duty of absolute impartiality. The expression of an opinion by the trial court on an issue of fact to be submitted to a jury, being prohibited by statute, is a legal error." *Nowell v. Neal,* 249 N.C. 516, 107 S.E. 2d 107.

In *S. v. Benton,* 226 N.C. 745, 40 S.E. 2d 617, the court instructed the jury, "The evidence as testified to by the witnesses has been rather clear." The Court held that under the circumstances of the case the expression, "The evidence as testified to

by the witnesses has been rather clear," must have been understood by the jury to have referred to the State's witnesses, and not defendant's, and was held for error as an expression of an opinion by the court upon the weight of the evidence. In *S. v. Horne,* 171 N.C. 787, 88 S.E. 433, the Court in its charge to the jury stated: "The State calls your attention to the fact that Dr. Stovall gave an admirably lucid account of what he conceived to be and his opinion of the mental condition of the defendant." The Court held that this expression was well calculated to weigh heavily against defendant, and awarded a new trial. In *S. v. Bryant,* 189 N.C. 112, 126 S.E. 107, the court made the following statement: "This witness has the weakest voice or the shortest memory of any witness I ever saw." The Court held that this expression of opinion entitled defendant to a new trial. As to other cases involving prejudicial comments on witnesses by the trial judge, see: *Sneed v. Creath,* 8 N.C. 309; *Noland v. McCracken,* 18 N.C. 594; *McRae v. Lawrence,* 75 N.C. 289; *S. v. Rogers,* 173 N.C. 755, 91 S.E. 854.

Defendant makes these contentions: The burden of proof is on the appellant not only to show error but to show that he was prejudiced to the extent that the verdict of the jury was thereby probably influenced against him. *Freeman v. Preddy,* 237 N.C. 734, 76 S.E. 2d 159. The Court said in *Freeman v. Preddy, supra:*

> "In applying this rule, we have consistently held that when, upon a consideration of the whole record, it clearly appears that the appellant, under no aspect of the testimony, is entitled to recover and that the evidence considered in the light most favorable to him is such that the trial judge would have been fully justified in giving a peremptory instruction, or directing a verdict, against him on the determinative issue or issues, any error committed during the trial will be deemed harmless. [Citing authority]."

Higgins, J., in a clear and accurate statement of the law as to the duties a physician owes his patient, said for the Court in *Hunt v. Bradshaw,* 242 N.C. 517, 88 S.E. 2d 762:

> "A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient. [Citing authority.] If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the conse-

BELK *v.* SCHWEIZER.

quences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable."

A physician, who holds himself out as having special knowledge and skill in the treatment of a particular organ or disease, is required to bring to the discharge of his duty to a patient employing him as such specialist, not merely the average degree of skill possessed by general practitioners, but that special degree of skill and knowledge which physicians similarly situated who devote special study and attention to the treatment of such organ or disease ordinarily possess regard being had to the state of scientific knowledge at the time. 70 C.J.S., Physicians and Surgeons, p. 949.

A qualified physician or surgeon does not guarantee or insure the correctness of his diagnosis, and ordinarily he is not responsible for a mistake in diagnosis if he uses the requisite degree of skill and care. Generally stated, a qualified physician or surgeon is not liable for an honest error or mistake in judgment if he applies ordinary and reasonable skill and care, keeps within recognized and approved methods, and forms his judgment after a careful and proper examination or investigation. He is not charged with the duty of omniscience, and ordinarily is not an insurer. In order to afford a basis for an action for malpractice, the want of skill or care must be a proximate cause of the injury or death of the patient. 70 C.J.S., Physicians and Surgeons, § 48, a, c, d, e.

This case presents for review very difficult questions of medicine and of law. A very large part of the evidence in the case consists of the nature and characteristics of tubular pregnancy, the medical problem presented thereby, the treatment rendered to plaintiff by defendant, and as to whether the methods used are or are not generally approved and recognized in the profession in the Greensboro area or in similar localities.

Plaintiff alleged in her complaint "that at all times herein complained of, the defendant did not possess the degree of professional learning, skill and ability which other physicians similarly situated, ordinarily possessed." Plaintiff introduced no evidence in support of this allegation in her complaint.

In applying the rule quoted from *Freeman v. Preddy, supra,* it cannot be said, in our opinion, after a careful examination of all the evidence in the light most favorable to plaintiff, and particularly plaintiff's evidence tending to show the care, treatment, and lack of attention given her by defendant who held himself out as an expert in the field of obstetrics and gynecology, that plaintiff under no aspect of the evidence is entitled to recover.

For error in the charge, plaintiff is entitled to a
New trial.