**Margaret CLARK, Appellee,**

v.

**UNITED STATES of America,
Appellant.**

**No. 11727.**

United States Court of Appeals
Fourth Circuit.

Argued March 5, 1968.

Decided Oct. 16, 1968.

Robert C. McDiarmid, Atty., Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., and John C. Eldridge, Atty., Dept. of Justice, and C. Vernon Spratley, Jr., U. S. Atty., on brief), for appellant.

John M. Hollis, Norfolk, Va., and Louis Ellenson, Newport News, Va. (Willcox, Savage, Lawrence, Dickson & Spindle, Norfolk, Va., and Ellenson & Fox, Newport News, Va., on brief), for appellee.

Before SOBELOFF, BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This action was brought against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346, to recover damages for medical malpractice of Army doctors who treated the plaintiff, Mrs. Margaret Clark, in 1958 at Tripler Army Hospital, Honolulu, Hawaii. From the judgment of the district court entered in favor of the plaintiff, the United States appeals contending that the trial judge erred in failing to weigh independently the evidence as to the proper standard of care and causation. We agree that the district judge erred in failing to clearly state his own conclusions with respect to negligence and proximate cause. Fed.R. Civ.P. 52(a). But even so his findings of fact are sufficient to support the judgment. And the judgment itself may be treated as a conclusion that there was actionable negligence.

On March 3, 1958, Mrs. Clark underwent an operation to correct a left ectopic tubal pregnancy, and at that time the presence of a chronic pelvic inflammatory disease was ascertained. She was readmitted to the hospital in July 1958 for treatment of that condition, and on July 25 a hysterectomy was performed by Drs. Kernan and Wayman, who were then in residency training in obstetrics and gynecology. The disease had so distorted the position of the various organs that the surgeons were unable to locate the right ureter during the operation. In addition the disease caused excessive bleeding which necessitated ligating a large number of bleeding points. Inadvertently, the right ureter was sutured in two places.

Two days after the operation Mrs. Clark was complaining of soreness and pain in the area of her right kidney and her temperature had reached 101 degrees. These symptoms could have indicated either a kidney infection or a blockage of the ureter. The doctors realized this, and, indeed, Dr. Wayman entered the following note on the patient's chart:

"Complains of all types of pain— Seems to center on right side (side of extensive surgery)—may have to get IVP to prove no ureter damage." However, the doctors elected to treat Mrs. Clark for kidney infection with antibiotics and neither consulted a urologist, had an intravenous pyelogram (IVP) performed, nor attempted in any manner to identify Mrs. Clark's ailment until the sixth post-operative day. On that day, August 1, an IVP was performed as well as a cystoscopy with an attempted right retrograde urogram. When it was discovered that the ureter had been compromised, a laporotomy was performed; however, the ureter had degenerated to such a point that it separated when the sutures were removed, and it was necessary to rebuild the ureter by inserting a catheter. Mrs. Clark was discharged from the hospital on September 6 as improved but not cured, and on September 8 she was admitted to a private hospital in Honolulu. The ureter had again become blocked and this time, after several attempts were made to drain the kidney, it was necessary to remove the right kidney to save the plaintiff's life.

It is this injury for which Mrs. Clark now seeks recovery.

It is conceded that there was no negligence involved in the inadvertent suturing of the ureter. If the plaintiff is to recover, it must be on the theory that Drs. Kernan and Wayman were negligent in delaying their use of standard diagnostic procedures to identify her illness and that the delay was the cause of the loss of her kidney.

■ The standard of care prescribed for physicians by Virginia,[1] as well as most other jurisdictions, is clear; a doctor is required to use "that degree of skill and diligence employed by the ordinary, prudent practitioner in his field and community, or in similar communities at the time." Reed v. Church, 175 Va. 284, 8 S.E.2d 285, 288 (1940). Moreover, a jury instruction applying the standard to diagnosis, as well as treatment, has been sustained. Id. at 291. Accord, Pearce v. United States, 236 F.Supp. 431, 432–433 (D.C.Okl.1964); Booth v. United States, 155 F.Supp. 235, 238–39, 140 (Ct.Cl. 145 1957); Word v. Henderson, 220 Ga. 846, 142 S.E.2d 244, 247 (1965); Belk v. Schweizer, 268 N.C. 50, 149 S.E.2d 565 (1966).

■ The facts in this case, as found by the trial judge and as substantially agreed upon by the experts, are that a blocked ureter presents a semi-emergency and requires immediate repair, that an IVP or a cystoscopic examination is the standard diagnostic procedure for distinguishing a kidney infection from a blocked ureter when a patient's symptoms are pain in the kidney area and fever, and that an IVP could have been performed on the second post-operative day without danger to Mrs. Clark and without too great an inconvenience. These findings are supported by substantial evidence and are not "clearly erroneous" within the meaning of Fed. R.Civ.P. 52(a). They support, if not require, the conclusion that unjustifiable delay in the use of the standard diagnostic procedure would constitute negligence.

However, the United States contends that there has been no finding of negligence. The defendant's argument is that the standard of care for physicians is a matter to be established by expert testimony, that the testimony of the expert witnesses was conflicting on this point, i. e., whether an IVP should have been promptly performed, and that we thus have no alternative but to remand for a resolution of the conflict and a specific finding as to negligence. We disagree.

It is of course true that doctors, unlike most other groups, are allowed to set "their own legal standards of conduct, merely by adopting their own practices." Prosser, Torts § 32 at 168 (3d ed. 1964). But the reason for this rule is closely related to the incompetency of laymen to judge medical matters. Ibid. See also, Morris, Custom and Negligence, 42 Col. L.Rev. 1147, 1164 (1942). Thus, where "the matter is regarded as within the common knowledge of laymen * * * it has been held that the jury may infer negligence without the aid of any expert." Prosser, supra, at 167.[2]

In this case the expert testimony provided all the information that laymen would need in order to decide the issue of negligence. The only real conflict in the evidence is the one pointed out by the

---

1. The Federal Tort Claims Act provides for liability of the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of *the place where the act or omission occurred*." 28 U.S.C.A. § 1346(b) (Emphasis added.) The court below referred to the law of Virginia on the stated assumption that the law of Hawaii is the same. Since the parties have not on appeal raised the question, we assume acquiescence, and consider the appeal on this premise.

2. In relation to diagnostic procedures this exception to the general rule has been applied most frequently, perhaps, to X-Rays, but other diagnostic procedures have been brought within its ambit as well. For an application and an excellent summary of the X-Ray cases see Corn v. French, 71 Nev. 280, 289 P.2d 173 (1955).

defendant, i. e., whether an IVP should have been given promptly. When it is known from expert testimony that a blocked ureter requires immediate repair and that a standard diagnostic procedure (IVP) is indicated, it does not take a doctor to decide how much delay is a failure to exercise due care—absent a sound medical explanation[3] for postponement of the procedure. But in this case there was such testimony. Dr. Devine, a urologist from Norfolk, Virginia, and Dr. Morgan, who removed Mrs. Clark's kidney and who is the President of the Hawaii Urological Society, both expressed the view that a reasonably qualified gynecologist or urologist would have performed an IVP on July 27. The district judge plainly indicated theirs was the testimony of greater weight, finding that one doctor testified to the contrary, and a fourth doctor both ways.

Since this was the *only* conflict in the testimony we are in as good a position as the district judge to make the judgment that on these facts there is negligence,[4] without regard to whether "negligence" is a question of fact or of law within the meaning of Fed.R.Civ.P. 52(a).[5] Essentially, Drs. Kernan and Wayman diagnosed Mrs. Clark's ailment as a kidney infection and treated her for it. That the diagnosis was erroneous does not, of course, furnish a basis for liability, but "there is a vast difference between an error of judgment and negligence in the collection and securing of factual data essential to arriving at a proper conclusion or judgment. If a physician, as an aid to diagnosis, i. e., his judgment, does not avail himself of the scientific means and facilities open to him for the collection of the *best* factual data upon which to arrive at his diagnosis, the result is not an error of judgment but negligence in failing to secure an adequate factual basis upon which to support his diagnosis or judgment." Smith v. Yohe, 412 Pa. 94, 194 A.2d 167, 173 (1963). See also, Hicks v. United States, 368 F.2d 626, 630 n. 1 (4th Cir. 1966).

The defendant makes a similar argument on the issue of causation, but we think that argument too is without merit. The district judge, it is true, said, that no expert could testify "with any probable degree of certainty" that earlier action would have saved Mrs. Clark's kidney, but we know of no court that requires a plaintiff to prove causation to a certainty or even to "negative entirely the possibility that the defendant's conduct was not a cause." Prosser, Torts § 41 at 246 (3d ed. 1964). It appears to be settled in Virginia that the question of causation is for the jury with only the admonition that "if the proof leaves it equally probable that a bad result may have been due to a cause for which the defendant was not responsible as to a cause for which he was responsible the plaintiff cannot recover." Reed v. Church, 175 Va. 284, 8 S.E.2d 285, 288 (1940). The district court found in the instant case an "indicated probability that an earlier operation to repair the ureter may have saved

---

3. The only medical explanation offered was possible "discomfort" to the patient.

4. The government strongly urges that the district judge concluded to enter judgment for plaintiff because he misinterpreted our decision in Hicks v. United States, 368 F.2d 626 (4th Cir. 1966). Since we hold that the district judge arrived at the correct decision the argument that he did so for a wrong reason becomes academic.

We agree, however, with the government's interpretation of *Hicks*. We do not read it to mean that every delay in the use of diagnostic procedures is negligence; we read *Hicks* to mean only that when con-fronted with symptoms of a condition requiring immediate treatment, a physician must utilize his knowledge and skill to ascertain the presence of that condition, absent some consideration that would cause the ordinary prudent practitioner to delay. Certainly *Hicks* laid down no new rule of law with respect to either negligence or proximate cause; indeed, it could not since the statute clearly requires us to apply the law of "the place where the act or omission occurred." 28 U.S.C.A. § 1346(b).

5. See 2B Barron & Holtzoff, Federal Practice and Procedure § 1137 n. 12.5 (Supp. 1967).

the kidney." We think such a finding is clearly adequate under the law of Virginia.

For the foregoing reasons, the judgment of the district court is

Affirmed.

BOREMAN, Circuit Judge (dissenting).

After concluding, properly so, I think, that the district court misconceived and misinterpreted the effect of this court's decision in Hicks v. United States, 368 F.2d 626 (4 Cir. 1966), my brethren detect findings of fact and conclusions of law with respect to negligence and proximate cause in the district court's opinion sufficient to support the judgment for the plaintiff. They even go so far as to say in the very first paragraph of the majority opinion: *"And the judgment itself may be treated as a conclusion that there was actionable negligence."* (Emphasis added.) I disagree and. my disagreement is based upon my analysis of the district court's disavowal, in view of Hicks, of his right to make findings, more particularly as to causation, even though there were direct conflicts in the evidence.

It is agreed that there was no negligence involved in the inadvertent suturing of the ureter as that was not an uncommon occurrence in such cases. The plaintiffs proceeded on the theory that it was negligence to wait until the sixth post-operative day to call in the urologist, that this delay did not conform to the standards of the medical profession in that community and that such delay was the proximate cause of the subsequent loss of the kidney.

The court below noted that the plaintiff was neurotic, that she was a difficult patient with continuous and varied complaints and two days after the operation she complained of numerous pains, including a severe pain in the area of her right kidney. Dr. Moore, the urologist who had performed the post-operative IVP, was called as a witness for the defense. He testified that the actions of the government doctors, Kernan and Wayman, in treating plaintiff for kidney infection on the second post-operative day rather than immediately ordering an IVP was consistent with reasonable standard medical practice. He did not feel that there had been any need for them to obtain a urological consultation and in the circumstances he felt that he would have treated plaintiff in the same fashion as had Doctors Kernan and Wayman.[1]

Plainly, there was, at the very least, considerable expert testimony as to the proper standard of care here and, unlike Hicks, the evidence as to whether the course followed by Doctors Kernan and Wayman was in accord with that standard was in contradiction. Hicks does not stand for the principle that a district court must hold the defendant liable in such circumstances. Instead, the trial court should make findings resolving the issue where the evidence is conflicting. If the district court should accept the one line of expert testimony and take into account the fact that the plaintiff was a chronic complainer and difficult to diagnose and treat, a permissible conclusion of nonliability might follow.

While the district court made certain observations in its opinion and which

---

1. One of the reasons Dr. Moore gave for his opinion was that plaintiff was a chronic psychosomatic complainer, so that it was difficult to tell whether her complaints were real or imaginary and that one could not rely upon her complaints. This was confirmed by the other doctors who had treated plaintiff. Dr. Wayman characterized her as a "chronic complainer" and noted that "The more complaints, the less obvious a condition is," Dr. Morgan, plaintiff's own witness, agreed that an accurate diagnosis would be rendered more difficult by many diverse complaints and indicated that the period of time the plaintiff had under his care had been a "rather trying experience" because of her difficult attitudes. He noted that "I can purely by memory recall that there were many complaints with no organic reason." Dr. Strode, who saw plaintiff both before and after the events here in question, felt that she was an extremely difficult patient to diagnose and treat.

have been taken out of context by the majority, I think the district judge would be amazed to learn that his comments might be accepted as findings upon consideration of his prepared opinion as a whole.

Paraphrasing, the district judge stated that the crux of plaintiff's cause of action lies in the alleged failure to subject her to relatively safe tests for the purposes of obtaining a definite diagnosis as to her symptoms of July 27, 1958, at a time when an earlier laparotomy *may* have resulted in saving the kidney; that under the rule of the *Hicks* decision the ultimate conclusion to be drawn from the basic facts becomes a question of law; that he was barred of the freedom to express personal views as to the right of a physician to use his independent judgment in making a diagnosis which may definitely be ascertained by a recognized and relatively safe test, and also as to any causal relationship between the alleged negligent post-operative treatment and the ultimate loss of the kidney; that *there is no alternative as to the final decision.* The judge interpreted *Hicks* as teaching that "every recognized test must be resorted to by the treating physician if he hopes to avoid liability for malpractice." He further stated that "While the writer of this opinion expresses the view that *Hicks* imposes an undue burden on the medical profession as a whole, and tends to deprive the physician of his right to use his own judgment in individual cases, the *Hicks* opinion is binding and must be followed by district courts throughout the Fourth Circuit." He further observed that *Hicks* resolves the troublesome question of causation by relying upon Gardner v. National Bulk Carriers, Inc., 310 F.2d 284 (4 Cir. 1962), and by relating causation in a malpractice case to the "failure to rescue" doctrine in admiralty where it is said that "causation is proved if the (negligence) destroys the reasonable possibility of rescue." These conclusions were stated after specifically pointing to certain conflicts in the testimony of the experts, not only on the issue of negligence but also on the issue of proximate cause. He stated positively that no expert urologist was willing to state with any probable degree of certainty that earlier surgical repair would have saved the kidney, but he found it "unnecessary to weigh the valued testimony of the experts" and followed with this comment: "Many of these questions now resolve themselves by reason of the recent case of *Hicks* * * *. Agreement or disagreement with the principles therein stated is not of importance."

As to the issue of proximate cause there was violent conflict in the testimony. There is no need to review this evidence in detail but it decisively supports the district judge in his statement that no expert urologist was willing to state with any probable degree of certainty that earlier surgical repair of the ureter would have saved the kidney. In fact, it would appear to one who was not present at the trial that the weight of this testimony pointed to the fact that the delay charged as negligence had no substantial effect on the outcome.

I do not construe *Hicks* as altering the traditional tort concepts of causation as applied by state and federal courts. In *Hicks* this court found that the doctor involved had failed to make a test which was *demanded* by the indicated standard of care and which would have shown that the decedent was suffering from a condition "lethal if not attended to promptly." 368 F.2d at 629. On the question of causation it was noted that "Both of plaintiff's experts testified categorically that if operated on promptly, Mrs. Greittens would have survived, *and this is nowhere contradicted by the government expert.*" (Emphasis supplied.) 368 F.2d at 632. The facts in *Hicks* demonstrate that causation in the usual sense had been shown without contradiction, i. e., that it was more probable than not that the negligence substantially caused or added to the fatal injury. As I interpret *Hicks* the reference in the opinion to the admiralty law of causation in a "failure to rescue" sit-

956

uation was used as an analogy but that it was not intended to lay down a principle of tort law supplanting long-established and approved state rules.

If the district judge had not felt bound by *Hicks* under the circumstances of this case and with respect to the evidence bearing upon the issues of negligence and causation I think it is clearly evident from the judge's opinion that he would have made explicit findings with respect to both issues. With all due respect to the opinion of the majority to the contrary, I think it is the duty of the district judge to resolve these conflicts in the evidence and to state his findings and conclusions. To that end I would remand this case for that purpose.