878 F.2d 1430
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Edward G. LINDENMUTH, as personal representative of the
estate of Leslie B. Lindenmuth, Plaintiff-Appellant,
v.
Erika M. BLANTON, M.D., Doctors Thomas, Blanton, Fiedler, &
Feore, Inc., B. Gerald Yount, Jr., M.D., Radiology
Associates of Richmond, Inc., Defendants-Appellees,
and
Harry THOMAS, Jr., M.D., Adam J. Fiedler, M.D., J. Coleman
Feore, M.D., Sandra L. Brawner, M.D., Chippenham
Hospital, Inc., Defendants.
 No. 88-2845.
 United States Court of Appeals, Fourth Circuit.
 Argued April 11, 1989.
Decided July 3, 1989.
Rehearing and Rehearing In Banc Denied July 28, 1989.
 
 Fred Dempsey Smith, Jr. (Fred D. Smith, Jr., P.C., James M. Minor, Jr., Minor & Associates on brief) for appellant.
 Jack B. Russell (Deborah A. Holloman, Browder, Russell, Morris & Butcher, Harry L. Thompson, Thompson, Smithers, Newman & Wade on brief) for appellee.
 Before MURNAGHAN and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 In this case we must determine if the trial court's supplemental instructions in response to a jury inquiry changed plaintiff's burden of proof and theory of the case. We think they did not and thus affirm.
 
 I.
 
 2
 Plaintiff Leslie B. Lindenmuth initially visited Dr. Erika M. Blanton on June 28, 1985, complaining about menstrual irregularity. During this visit, Dr. Blanton detected a palpable, two centimeter mass in plaintiff's right breast. Dr. Blanton diagnosed the mass to be a cyst and ordered a mammogram to verify her diagnosis.
 
 
 3
 The mammogram was performed by Dr. B. Gerald Yount on July 19, 1985. After reviewing the mammogram, Dr. Yount reported that there was no evidence of cancer, but noted the presence on the X-ray of fine stippled opacities, which he identified as artifacts. Following the mammogram, Lindenmuth continued under the care of Dr. Blanton until December, 1985. At that time, Lindenmuth telephoned Dr. Blanton and informed her that she would be moving to Arizona. Dr. Blanton recommended follow-up care in Arizona and sent plaintiff a copy of her medical records.
 
 
 4
 On March 27, 1986, plaintiff saw Dr. Jeffrey Northrup in Mesa, Arizona. Dr. Northrup referred plaintiff to Dr. John P. Schwartz, a general surgeon, who ordered a mammogram. Dr. Robert Stoecker performed a mammogram on April 21, 1986. He reported the presence of micro-calcifications which he interpreted as evidence of breast cancer. Dr. Schwartz biopsied the mass on May 2, 1986, and confirmed the diagnosis of breast cancer.
 
 
 5
 Following surgery and chemotherapy, a bone scan in December 1987 revealed a recurrence of the metastasis. The recurrence was inoperable and plaintiff died on August 10, 1988.
 
 
 6
 Plaintiff filed this action on September 21, 1987, alleging that defendants Blanton, Yount, and their professional corporations were negligent in their care and treatment because they failed to diagnose and treat her for breast cancer. She asserted that defendants' negligent failure to diagnose her cancer destroyed any substantial possibility of saving her breast and surviving breast cancer. Defendants denied they were negligent and asserted that plaintiff had no substantial possibility of saving her breast and surviving breast cancer when she came under their care. After a three day jury trial, the jury returned verdicts for the defendants on April 13, 1988.
 
 
 7
 Plaintiff appeals.
 
 II.
 
 8
 Following the conclusion of the evidence, the trial court charged the jury on the applicable law. The charge included instruction on plaintiff's burden of proof and on the specific elements the plaintiff had to prove by a preponderance of the evidence. The judge told the jury several times that the specific injury for which the plaintiff was suing was the "loss of a substantial possibility of being cured of cancer and saving her breast." After four hours of deliberations, the jury asked the following questions:
 
 
 9
 1) Can we separate negligence from approximate (sic) cause?
 
 
 10
 2) Can we award damages for negligence but not for probable (sic) cause?
 
 
 11
 The trial court responded by again addressing the two concepts of negligence and proximate cause:
 
 
 12
 Negligence is the failure to use reasonable care. Reasonable care in this context is the degree of skill, method, and diligence in the care and treatment of the plaintiff that a reasonably prudent doctor in the same field of practice of specialty in Virginia in 1985 would have used under the circumstances of this case.
 
 
 13
 Now, that means that Dr. Blanton had to measure up to the standard that applied to gynecologists in Virginia in 1985, and that Dr. Yount had to measure up to the standard that applied to radiologists in 1985.
 
 
 14
 Now, if either one of them didn't do those things that doctors similarly situated in the same line of speciality would have done in Virginia in 1985, then that would be negligence.
 
 
 15
 Now, proximate cause. I will give you the definition of that again. A proximate cause of an injury is a cause which in a natural and continuous sequence produces the injury or damage. It is a cause without which the accident, injury, or damage could not have occurred.
 
 
 16
 Now, let me explain that to you. If either doctor or both doctors were guilty of some negligence in 1985 when they treated the plaintiff, that negligence wouldn't have had any significance unless that negligence resulted in her having injury that flowed from that negligence.
 
 
 17
 Now, to translate that even further in this case, that if they had done something that you feel that they should have done not to be negligent in 1985 and had detected this tumor at that time, and it had then been treated, you would have to find that that treatment would have prevented her from being in the shape that she is in today.
 
 
 18
 Plaintiff claims the supplemental instructions changed plaintiff's burden of proof and theory of the case. As she argues, while the initial charge told the jury that plaintiff must prove that defendants negligently caused her loss of a substantial possibility of survival, the supplemental charge told the jury that plaintiff must prove that defendants' negligence proximately caused her 1988 medical condition. Such an instruction, plaintiff contends, is antithetical to this circuit's decisions in Hicks v. United States, 368 F.2d 626 (4th Cir.1966); Clark v. United States, 402 F.2d 950 (4th Cir.1968); and Waffen v. U.S. Dept. of Health and Human Services, 799 F.2d 911 (4th Cir.1986), which do not require proof that plaintiff's medical condition at the time of trial was proximately caused by defendants' failure to diagnose. Plaintiff further argues that where two conflicting jury instructions occur, and one is erroneous, the verdict must be set aside and a new trial ordered because the jury may have followed the erroneous law.
 
 
 19
 We think, however, that the jury instructions, taken as a whole, were satisfactory. The instructions must be considered in the context of the evidence presented. To prove that a substantial possibility to save her breast and cure her cancer existed in June of 1985, plaintiff had to prove that the breast cancer had not metastasized in June of 1985. This issue was the focus of all the expert testimony, with the exception of the testimony on the standard of care issue. The instructions to which plaintiff objects meant only that the jury would have to find that defendants' due care could have prevented plaintiff's breast cancer from metastasizing. Since the metastasis of the breast cancer destroyed plaintiff's possibility of survival, metastatic breast cancer was equivalent to the loss for which plaintiff sought to recover: the destruction of a substantial possibility of survival.
 
 
 20
 In the original charge, moreover, the court gave several precise explanations of the loss for which plaintiff sought recovery: "... plaintiff's loss of a substantial possibility of being cured of cancer and saving her breast." The court's explanation of proximate cause in the supplemental charge did not contradict these explanations. The court's only reference to the harm plaintiff claimed was in a generic sense when it defined proximate cause. "Whether a jury has been properly instructed is to be determined, not upon consideration of a single paragraph, sentence, phrase or word, but upon consideration of the charge as a whole." McClure v. Price, 300 F.2d 538, 547 (4th Cir.1962). Taken together, the original and supplementary instructions make clear that plaintiff did not have to prove to a certainty that she would have survived breast cancer if it had been diagnosed in June of 1985, only that there was a substantial possibility that she would have survived breast cancer if the cancer had been diagnosed in June of 1985. The two instructions do not conflict and do not warrant a new trial.
 
 
 21
 The central question in this three day trial was whether the defendants' negligence proximately caused the loss of a substantial possibility of saving plaintiff's life. The evidence went to that point and the court's instructions, taken as a whole, focused the jury's mind upon it. The jury's verdict resolved in favor of defendants the question of whether plaintiff's breast cancer had spread at the time she visited defendant doctors beyond the capacity of the medical profession to successfully treat it. It would not be proper to permit a somewhat metaphysical debate over instructions to obscure the fact that a jury, which heard this evidence, believed that the defendant physicians were not in a position to prevent the tragic circumstances that befell Mrs. Lindenmuth.
 
 
 22
 Accordingly, the judgment of the district court is
 
 
 23
 AFFIRMED.