## BARNETT v. BACHRACH.

### No. 117.

Municipal Court of Appeals for the District of Columbia.

Nov. 4, 1943.

Charles W. Peckham, of Washington, D. C., for appellant.

Milton Dunn, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Defendant engaged Dr. Joseph Harris to treat his wife during her period of pregnancy. There was evidence that in the course of such treatment she complained of certain pains in her lower right abdomen, and of nausea. Dr. Harris made a diagnosis of tubal pregnancy. He called in the plaintiff, a surgeon, for consultation. Plaintiff took the history and made a pelvic examination, in the presence of Dr. Harris. He found a mass the size of a small orange in the right ovarian region; from that and other symptoms he made a diagnosis of a tubal or extra-uterine pregnancy, confirm-

ing the diagnosis of Dr. Harris. Plaintiff recommended an immediate operation.

Plaintiff's testimony was taken by deposition and is not too clear as to precisely what authority he received. On direct examination he said, " * * * a diagnosis of extra-uterine pregnancy was made. * * * I discussed the importance of immediate operation with the patient in the presence of Dr. Harris. *Permission for operation was granted* and the patient was operated on by me." In answer to one question on cross examination he said: "I was engaged to perform an abdominal operation *and do whatever was necessary to cure the patient.* I was not engaged to do an appendectomy per se." But to the next question his answer was: "Mrs. Lillian Barnett engaged me *to perform an operation on her to remove a possible tubal pregnancy,* however an acute appendix was found instead and removed." These answers can fairly be taken to mean that the only express authority he received was to remove the tubal pregnancy. If plaintiff had more specific authority the evidence does not show it.

The operation was performed under anaesthesia, and upon opening the abdomen, plaintiff found that his and Dr. Harris' original diagnosis of tubal pregnancy was mistaken and that a normal pregnancy was present in the uterus. Also he found a very unusual condition in that the patient, instead of having one uterus, had a double uterus.[1] Also he found a very acute appendix. Deciding that this had caused patient's abdominal pains, he removed the appendix. He testified that she made an uneventful recovery and that he and Dr. Harris were satisfied that the source of her trouble had been removed.

Defendant's wife contended that as a result of the operation she had difficulty in getting about the house and going up and down stairs and was confined to bed for a "considerable" length of time. There is no denial that she gave birth in the usual course to a normal child in a normal way.

Defendant resisted the surgeon's claim for his fee on the sole ground that the appendix had been removed without the consent of himself or wife. He has disavowed any charge of malpractice, any claim of negligence, either in the original diagnosis or in the operation itself. He rests his defense entirely upon the claim that the operation, having gone further than was authorized, constituted a trespass or assault upon his wife.

■ We recognize and follow the rule announced in a number of cases,[2] including the celebrated case of Schloendorff v. Society of New York Hospital, 211 N.Y. 125, 105 N.E. 92, 93, 52 L.R.A., N.S., 505, Ann.Cas.1915C, 581, in which Justice Cardozo said: "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages. * * * *This is true, except in cases of emergency where the patient is unconscious, and where it is necessary to operate before consent can be obtained.*" (Italics supplied.)

The question for our decision is whether an emergency existed so as to justify the removal of the appendix without the express consent of the patient. To answer the question we must look at the picture through the eyes of the surgeon. The patient lay before him on the operating table, her abdomen laid open, and unconscious from the anaesthetic. Her pregnancy was a normal one in the uterus and not tubal as he and Dr. Harris had thought it was. She did reveal a very unusual structural condition in the form of a double uterus.[3] More immediately important, he beheld a very acute appendix with all its potentially dangerous consequences.[4]

What was the surgeon to do? Should he have left her on the operating table, her abdomen exposed, and gone in search of her husband[5] to obtain express authority to remove the appendix? Should he have

---

[1] Double uterus is described as a very rare malformation or deformity. Bland: Gynecology, Medical and Surgical, Volume 1, Page 430; Crossen: Diseases of Women (1926) P. 820.

[2] Pratt v. Davis, 224 Ill. 300, 79 N.E. 562, 7 L.R.A.,N.S., 609, 8 Ann.Cas. 197; Mohr v. Williams, 95 Minn. 261, 104 N.W. 12, 1 L.R.A.,N.S., 439, 111 Am.St.Rep. 462, 5 Ann.Cas. 303; Rishworth v. Moss, Tex.Civ.App., 159 S.W. 122; Franklin v. Peabody, 249 Mich. 363, 228 N.W. 681; Rolater v. Strain, 39 Okl. 572, 137 P. 96, 50 L.R.A.,N.S., 880.

[3] See footnote 1, supra.

[4] See footnotes 6 and 9, infra.

[5] Though the husband testified he was just outside the operating room, there is no evidence that plaintiff knew it.

closed the incision on the inflamed appendix and subjected the patient, pregnant as she was,[6] to the danger of a general spread of the poison in her system, or to the alternative danger and shock of a second, independent operation to remove the appendix? Or should he have done what his professional judgment dictated and proceed to remove the offending organ, regarded as it is as a mere appendage serving no useful physiological function and causing only trouble, suffering, and oft-times death?[7]

■ Defendant does not say that the plaintiff used bad judgment, or that the operation was not dictated by sound surgical procedure, or that it was a failure. He says only that it was unauthorized, and makes no real showing of resulting injury or damage. True, the patient claimed she had had no abdominal pains before the operation; but if that is so it is difficult to understand why the plaintiff was called in at all. As to her claim of suffering and inability to get about and climb stairs after the operation we take judicial notice that such is the normal sequel of most surgical operations,[8] especially in the presence of pregnancy.

This case is not one where a patient was rendered barren; on the contrary, her foetus was not disturbed and she achieved motherhood in a normal manner. Nor was she crippled or otherwise mutilated; on the contrary the operation was a success, and she is forever relieved from the fear and danger of appendicitis.[9]

And yet we are asked to deny the plaintiff's fee because he comes into court unable to show express authority for the excision he made. It seems to us that to adopt that view would be granting poor reward indeed for faithful professional service. Moreover this would require us to shut our minds and eyes, as judges, to "truths that all others can see and understand." [10]

■ To accept this view, we would have to deny that it was an emergency and declare a rule which would tend to make every surgeon litigation-conscious instead of duty-conscious as he stands, scalpel in hand, over his unconscious patient. This we decline to do. We hold the law to be that in case of emergency a surgeon may lawfully perform, and it is his duty to perform, such operation as good surgery demands even when it means extending the operation further than was originally contemplated; [11] and that for so doing he is neither to be held in damages, or denied recovery of his fee.

---

[6] The combination of pregnancy and appendicitis generally leads to abortion or miscarriage. de Quervain: Clinical Surgical Diagnosis (1926) P. 350. The author recites the highly dangerous potential consequences.

[7] E. A. Cafritz, M. D., F. A. C. S., Before 15th Annual Scientific Convention of D. C. Med. Society, Sponsored by U. S. Public Health Service. (1943): "The appendix serves no useful function in the body. It is a loafer. And, just like a loafer on the streets, it can become a dangerous element. The loafer may become a criminal; the appendix may become inflamed and kill." Citing Da Costa: Modern Surgery.

J. Shelton Horsley, John S. Horsley, Jr. and Guy W. Horsley: Appendicitis: Newer Methods of Treatment, Journal of the American Medical Association, 113:-1288 (September 30) 1939: "Immediate operation is done as soon as the diagnosis is made, no matter what the stage of the disease."

Modern medical authorities seem to be in complete agreement on this point. Thomas O. Burger and Harold C. Torbert: Problems in the Diagnosis of Acute Appendicitis, California and Western Medicine, 50:7 (January) 1939; Louis J. Morse and Mil-

ton J. Rader: Acute Appendicitis. A Twenty-year Clinical Survey, Annals of Surgery, 111:213 (February) 1940; G. Grey Turner: Acute Appendicitis, British Medical Journal, 4056:691 (October 1) 1938.

[8] Houston Clinic v. Busch, Tex.Civ.App., 64 S.W.2d 1103.

[9] Louis J. Morse and Milton J. Rader: Acute Appendicitis. A Twenty-Year Clinical Survey, Annals of Surgery, 111:213 (February) 1940: "Acute appendicitis continues to be the most frequent indication for major surgical intervention today. Yet it ranks second only to cancer among surgical diseases as a cause of death for all ages. According to Ochsner, in 1936, one person in the United States died every 29 minutes from appendicitis."

[10] McGovern v. New York, 234 N.Y. 377, 138 N.E. 26, 25 A.L.R. 1442, quoting Taft, C. J. in Bailey v. Drexel Furniture Co., 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L.R. 1432.

[11] Pratt v. Davis, supra; Rolater v. Strain, supra; Jackovach v. Yocom, 212 Iowa 914, 237 N.W. 444, 76 A.L.R. 551; Delahunt v. Finton, 244 Mich. 226, 221 N. W. 168; Staloch v. Holm, 100 Minn. 276, 111 N.W. 264, 9 L.R.A.,N.S., 712.

The law should encourage self-reliant surgeons to whom patients may safely entrust their bodies, and not men who may be tempted to shirk from duty for fear of a law suit. The law does not insist that a surgeon shall perform every operation according to plans and specifications approved in advance by the patient, and carefully tucked away in his office-safe for courtroom purposes.

We do not attempt to mark off the line which will define the type of emergency which will create implied consent in every case; that is a question for the jury,[12] or, as here, for the judge who sat as trier of the facts. Here we hold only that on the showing made, authority was born of the emergency, and conferred upon the surgeon the legal right to proceed as he did.

Affirmed.

---

[12] Mohr v. Williams, supra, and Rolater v. Strain, supra.