## FORREST v. EASON et al.

No. 7891.   Decided Sept. 16, 1953.   (261 P. 2d 178.)

*W. D. Beatie,* Salt Lake City, for appellant.

*Stewart, Cannon & Hanson* and *Ernest F. Baldwin, Jr.,* Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a judgment entered on a directed verdict against plaintiff, who sued defendant, licensed naturopathic physician, for an alleged brain injury. Plaintiff claimed liability on account of 1) defendant's lack of licensed authority to practice minor surgery, and 2) his course of treatment involving injections of fluids which plaintiff contends constituted failure to use ordinary care, skill and knowledge. Affirmed, costs to defendant.

As to 1) : Whether defendant was licensed to practice minor surgery is not clear, but immaterial here. The record does not indicate the plaintiff sustained the burden of proving defendant negligent. A plaintiff, unable to rely on any res ipsa loquitur theory, must prove negligence in a case allegedly involving malpractice.[1]

---

[1] *Jackson v. Colston,* 1949, 116 Utah 295, 209 P.2d 566; *Walkenhorst v. Kesler,* 1937, 92 Utah 312, 67 P.2d 654; *Baxter v. Snow,* 1931, 78 Utah 217, 2 P.2d 257.

Civil liability does not depend necessarily on lack of statutory licensing qualification,[2] but rather upon failure to exercise that degree of care and skill considered proper by correct and accepted standards of the profession involved, or, stated otherwise, failure to use that care exercised by skilled professional men doing like work in the vicinity.[3]

As to 2) : Viewing the evidence in a light most favorable to plaintiff, as we must,[4] it appears that plaintiff, 62, had been a cleaning woman in a local building for 6 years, that she left such employment 2 years before her alleged injury on account of an arthritic knee condition. Thereafter she continued to suffer and consulted defendant, who, between Aug. 4 and Dec. 27, 1950, gave her some 48 treatments of varying types, including heat applications, manipulation, and some 23 injections of either vitamins, procaine hydrochloride, penicillin, or desoxycorticosterone, as he deemed best. One such injection was attempted in the vein of the left arm without success on Nov. 6, some 7 weeks before disablement, causing considerable discoloration and swelling for about 2 weeks, and soreness for a protracted period. It is uncontroverted that such failure to inject is not uncommon, and also, that the defendant had no difficulty in penetrating the vein of the right arm. No evidence directly connects such incident to the ultimate injury, nor is plaintiff seeking damages for injury to the arm. On Dec. 27, plaintiff sought treatment, complained of a headache before receiving the same, received a vitamin shot in the arm, and although denied by defendant, testified that she received a second

[2]*McKay* v. *State Board of Examiners*, 1938, 103 Colo. 305, 86 P.2d 232.

[3]*Edwards* v. *Clark*, 1938, 96 Utah 121, 83 P.2d 1021; *McKay* v. *State Board of Examiners*; supra.

[4]*Finlayson* v. *Brady*, 121 Utah 204, 1952, 240 P. 2d 491.

injection of some substance in another part of the anatomy. After resting, she called a cab, said she felt terrible, and that her head was nearly killing her. She was assisted into the cab, taken home, and paid her fare. She insisted, however, that she remembered nothing for 3 weeks after she entered the cab.

Her headaches continued, according to her sister, and plaintiff became progressively worse until five days later she appeared to be in a death struggle following a convulsion, according to Dr. Day, physician summoned, who administered stimulants and who attended her almost daily thereafter until mid-April, when she was able to get around with the aid of a cane, but without the ability to do housework. At trial time about 6 months later, she was able to get about, had experienced an improvement, but was unable to get around as well as she had been able to in August, 1950 when she first consulted defendant.

Whether the injection of fluids may have been in derogation of accepted professional standards is undeterminable from this record, which is devoid of facts indicating that their use directly was responsible for her injury. Best that can be said is that when Dr. Day first examined plaintiff there was evidence that injections *had* been made, but he could not determine *what substances* had been injected, and no evidence was adduced as to how the injections were given. Dr. Day said the brain injury could have resulted from several causes, naming them, but that he was "of the impression" that the injury "probably" was caused by an emboli due to bacteriemia or some soluble substance that *could be* injected into the system, — such as bacteria (from) a dirty needle or from oil in penicillin or something of that nature that could reach the circulation through the lung. He admitted that all penicillin did not contain oil.

Counsel asked Dr. Day the following hypothetical question:

"From what you observed first of Mrs. Forrest's physical condition as of Jan. 2, 1951, can you tell me * * * if you have an opinion

as to whether or not, from what you observed, that the *administration* of substances by reason of injections had been *in a careful and skillful manner* in accordance with that of a reputable physician and surgeon in and about Salt Lake City, Utah?" (Emphasis added.)

An objection to answering the question was sustained on the ground that the doctor had testified only as to what *substances* might have caused the injury, not as to the *manner* in which the injections were made, hence no proper foundation was laid. There is no evidence in the record as to the *manner* of making injections, and plaintiff's pleadings attribute liability to use of certain *fluids*, not the *manner* of their injection. The answer, therefore, would appear objectionable.[5]

Giving the case to the jury under such circumstances, with no showing that use of the substances was not in accordance with accepted standards of professional skill, with no showing as to the manner of injection, and with no showing that any of the substances were deleterious, allows the jury to indulge in that type of speculation unpermitted by this or other courts generally.[6]

Counsel lists authorities holding a treatment may indicate so plainly a lack of due care as to dispense with expert testimony.[7] We agree, but this is not such a case. Plaintiff did not show that the treatments plainly indicated unacceptability under standards of skill espoused by the professions authorized to treat the ailment, and adduced nothing to show such treatments in

---

[5]20 Am.Jur., Evidence, p. 667, Sec. 795.

[6]*Jackson* v. *Colston,* supra; *Edwards* v. *Clark,* supra; *Anderson* v. *Nixon,* 1943, 104 Utah 262, 139 P.2d 216; *Passey* v. *Budge,* 1934, 85 Utah 37, 38 P.2d 712; *Baxter* v. *Snow,* supra; *Peterson* v. *Richards,* 1928, 73 Utah 59, 272 P. 229.

[7]*Baxter* v. *Snow,* supra.

fact resulted in injury. To charge a professional man under such circumstances would make him an insurer. We believe this case to be of the type requiring expert testimony.[8]

Plaintiff asserts further that expert testimony is unnecessary where an undiseased portion of a patient's body is injured by one's negligence,[9] obviously alluding to the injury to plaintiff's left arm occurring on Nov. 6. Granted, but the fallacy of, and a complete answer to plaintiff's assertion, is that plaintiff sued not for damage to the arm, but to the brain. The question of the need for expert testimony in such event, is quite immaterial.

Finally, plaintiff's counsel points out that if an injury can be attributed to two or more causes, one of which is the negligence of defendant, a jury question arises. He calls attention to the disputed evidence as to whether defendant gave one or two injections on Dec. 27. Our answer is that negligence cannot be assumed simply because two, instead of one, injections were given; the burden still remaining on plaintiff affirmatively to show negligence, which appears not to have been done here.

WOLFE, C. J., and McDONOUGH, CROCKETT, and WADE, J.J., concur.

[8]*Anderson* v. *Nixon,* supra; *Baker* v. *Wycoff,* 1938, 95 Utah 199, 79 P.2d 77; *Wigmore, Evidence,* (2nd ed.) Vol. VII P. 453, Sec. 2090.

[9]*Walkenhorst* v. *Kesler,* supra; *Morrison* v. *Lane,* 1935, 10 Cal. App. 2d 634, 52 P.2d 530; *Baxter v. Snow,* supra.