Elizabeth Irene REISER, By and Through her guardian, Richard E. Reiser, Richard E. Reiser, and Eleanor Reiser, Plaintiffs and Appellants,

v.

Richard LOHNER and Howard Francis, Medical Doctors, and Provo Obstetrical and Gynecology Clinic, Inc., a Professional corporation, Defendants and Respondents.

No. 16444.

Supreme Court of Utah.

Jan. 4, 1982.

Jackson Howard, Provo, for plaintiffs and appellants.

Glenn C. Hanni, R. Scott Williams, Rex J. Hanson, Salt Lake City, for defendants and respondents.

HALL, Chief Justice:

Plaintiffs appeal the judgment of the district court, based on a jury verdict, which denied them recovery for alleged medical malpractice.

Defendants Richard Lohner and Howard Francis are medical doctors and the principal officers and directors of defendant Provo Obstetrical and Gynecology Clinic, Inc. (hereafter "clinic"). Plaintiff Eleanor Reiser was treated at the clinic in 1964 and 1969 by Dr. Francis while pregnant with her fourth and fifth children. Inasmuch as Mrs. Reiser was Rh sensitized,[1] Dr. Francis determined to induce labor to deliver her fifth child at 38 weeks of pregnancy so as to minimize the possible adverse effects thereof. That procedure was also indicated since Mrs. Reiser was emotionally and physically upset, and the cervix was soft and effaced, which made conditions favorable for induction.

Mrs. Reiser became pregnant again in late 1970. As this sixth pregnancy progressed, Dr. Francis saw Mrs. Reiser on several occasions. By this time, defendants had developed a rotation system for seeing patients. On June 24, 1971 (at the 38th week of pregnancy), Dr. Lohner saw Mrs. Reiser for the first time and learned that she was Rh sensitive. During the course of that examination, a titer test was performed.[2] The test results were received on June 26, 1971, and revealed a significant titer.

Dr. Lohner called Mrs. Reiser and asked her to come to the clinic to discuss the options available. On her arrival, he explained that the fetus may be severely involved with the Rh problem and that induction would be the safest solution. A vaginal examination revealed that conditions for induction were not favorable inasmuch as the cervix was thick and firm. Also,

Mrs. Reiser was reluctant to have labor induced if there were another alternative. Dr. Lohner then explained that an amniocentesis[3] could be performed to more accurately determine the status of the fetus. He also explained that the usual risks involved in such a procedure included sticking the fetus with the needle and inducing infection within the uterus. Mrs. Reiser agreed that an amniocentesis was a suitable alternative to induced labor.

Mrs. Reiser was prepared for the procedure by a nurse who asked the patient to lie on a table in the examination room. After a few minutes, Dr. Lohner came in, took the patient's blood pressure[4] and performed the amniocentesis. Dr. Lohner thereupon left Mrs. Reiser in the care of the nurse. Mrs. Reiser was asked how she felt and she responded by saying, "I feel fine." The nurse then obtained for Mrs. Reiser a glass of water from the lab. As Mrs. Reiser was raising up to drink the water, she became quite pale and exclaimed, "Don't let me fall." The nurse reassured Mrs. Reiser and called for another nurse to assist. One of the nurses then went to get smelling salts while the other stayed with Mrs. Reiser. Immediately thereafter, at approximately 11:30 a. m., Dr. Lohner came in and examined Mrs. Reiser. Finding no pulse, the doctor made the diagnosis of cardiac arrest and started his resuscitative efforts. He gave Mrs. Reiser a "big thump" on the chest, established an airway, and began mouth-to-mouth resuscitation[5] and closed-chest cardiac massage. An ambulance was called, and Dr. Lohner accompanied Mrs. Reiser to the hospital, where they arrived at 11:40 a. m.

1. Rh sensitivity is the development of antibodies in an Rh negative mother which occurs at the time of delivery of the first Rh positive baby. The antibodies are thereafter present to affect future Rh positive babies, by actually crossing the placental barrier and attaching themselves to the red blood cells of the fetus, ultimately causing destruction of those cells.

2. The titer test is an evaluation of a sample of Mrs. Reiser's blood. It measures the level of Rh sensitivity in the mother, but does not necessarily indicate status or involvement of the fetus.

3. This procedure, as explained to Mrs. Reiser, requires the insertion of a needle probe and the extraction of sample fluid from the amniotic sac. In this manner, the baby's involvement with the Rh factor can be measured quantitatively.

4. The doctor so testified, although it was never indicated on the patient's record.

5. The doctor resorted to mouth-to-mouth resuscitation when he was unable to get a mechanical device (ambubag) to seal adequately around the patient's nose and mouth.

Mrs. Reiser was diagnosed as suffering from ventricular fibrillation.[6] After the heartbeat was stabilized by electric shock treatment, adrenalin was shot directly into Mrs. Reiser's heart so as to strengthen the heartbeat.

Late that evening, Mrs. Reiser commenced labor. Plaintiff Elizabeth Reiser was born the next morning at 4:27 a. m. The baby was born with severe brain damage and was later diagnosed as suffering from cerebral palsy and spastic quadriplegia, all of which was indisputably caused by anoxia.[7]

The complaint was filed on May 1, 1974. The first cause of action sought damages for personal injuries suffered by Mrs. Reiser; the second cause of action sought damages for personal injuries suffered by Elizabeth; and the third cause of action sought damages for emotional distress of the parents. On January 16, 1976, Judge Allen Sorensen granted defendants' motion for summary judgment as to plaintiffs' first and third causes of action. The court ruled that the applicable statute of limitations had run against any claims by Mrs. Reiser, and that Utah does not recognize a negligence claim solely for emotional distress. The court preserved the questions of liability and damage to Elizabeth on the basis that the statute of limitations did not run during the child's minority.

Prior to trial, in November, 1977, defendants made a motion in limine to exclude evidence that a titer test was not taken until June 24, 1971, nor was an amniocentesis given to Mrs. Reiser prior to June 26, 1971. The trial court granted the motion.

The issues of liability and damage to Elizabeth were tried to a jury on November 14 through 21, 1977, with Judge Sorensen presiding. When the jury was unable to reach a verdict, the Judge declared a mistrial. Judge Sorensen thereafter disqualified himself and the case was assigned to Judge James Sawaya. Thereafter, Judge Sawaya also granted defendants' motion in limine. The second trial commenced on January 29, 1979. A focal concern at trial was what caused the cardiac arrest. Various experts testified at trial that the cardiac arrest could have been the result of one or more of the following: supine hypotension syndrome;[8] vasovagal depression syndrome;[9] amniotic embolism;[10] allergic reaction to xylocaine, the local anesthetic;[11] and spontaneous stoppage of the heart. After six days of trial, the jury returned a verdict of no cause of action against plaintiffs. This appeal followed.

On appeal, plaintiffs first contend that the trial court erred in granting defendants' motion in limine. In granting the motion, the trial court directed plaintiffs "not to present . . . or seek to have admitted . . . any evidence relating to the fact that an antibody titer reading was not taken by the defendants on the plaintiff's mother prior to June 24, 1971, and that an amniocentesis procedure was not performed by the defendants on the plaintiff's mother prior to June 26, 1971." The theory of such a ruling is that Rh sensitivity did not cause the injury and that the doctors' negligence in diagnosing and treating the sensitivity, if any, is irrelevant and potentially prejudicial

6. Fibrillation is a type of abnormal muscular contraction of the heart where the constituent muscle fibers do not act together but separately, which produces chaotic, ineffectual beating. This is to be contrasted with asystole, which is total stoppage of the heart.

7. A lack of oxygen to the infant's brain which resulted from the cardiac arrest.

8. This condition in pregnant women is caused by the depression of the vena cava vein by the uterus, together with insufficient collateral circulation which tends to have a slowing effect on the heart.

9. This condition is due to excessive activity of the vagi (cranial nerves extending throughout the body). It is generally caused by apprehension coupled with an "insult" (e.g., puncture) to the body. It is marked by a fall in blood pressure, slow pulse, pallor, sweating, and anxiety.

10. A condition in which pieces of tissue from the amniotic fluid are lodged in various parts of the mother's body through her blood stream.

11. Administered to the skin where the needle to be used in the amniocentesis is inserted.

to the determination of negligence in relation to the harm suffered.

Plaintiffs claim that this alleged negligence with respect to the titer test and amniocentesis is crucial to their cause of action. They assert that the cardiac arrest was caused by supine hypotension syndrome and that to have Mrs. Reiser on her back for *any* procedure when she was 38 weeks pregnant was negligence. But for defendants' failure to properly diagnose the Rh sensitivity (so goes the argument), plaintiff never would have had to lie on her back for the belatedly conducted amniocentesis.

At trial, defendants answered such contentions in several ways. Their evidence was to the effect that the cardiac arrest was not caused by supine hypotension syndrome. They pointed to the fact that there is no known case of the syndrome leading to heart attack; indeed the very nature of the syndrome is such that when the vena cava is sufficiently depressed by the uterus, a body reflex causes the mother to move so as to relieve the depression. Furthermore, they pointed out that Mrs. Reiser had previously given birth to five other children, and that as a woman bears children her body develops collateral circulation to carry the blood back to the heart when the vena cava is depressed. Finally (and most importantly), they offered evidence that, on the facts presented, it was not negligence to allow Mrs. Reiser to be on her back for a period of time less than ten minutes.[12] There was evidence that, in all likelihood, Mrs. Reiser reasonably could have been on her back while sleeping, during a vaginal or pre-natal examination or for many other reasons.

The trial judge was within the bounds of his authority when he excluded the tests (or lack thereof) pertaining to Rh sensitivity. It is undisputed that Rh sensitivity was not the cause of the child's injury, and any evidence as to the diagnosis of such sensitivity therefore appears to be without relevance.[13] When this is coupled with the potential prejudicial effect such evidence might have had upon the jury, the trial judge was well within his discretion to exclude it.[14]

Plaintiffs' second contention on appeal is that the court erred in submitting a special verdict to the jury. The special verdict form asked the following five questions: (1) Was defendant, Richard Lohner, negligent in allowing Mrs. Reiser to lie on her back for an excessive period of time? (2) If your answer to no. 1 is yes, was such negligence a proximate cause of the injury or damage to the plaintiff? (3) Was the defendant Richard Lohner negligent in the acts and efforts utilized or not utilized to resuscitate Mrs. Reiser during the time she was unconscious? (4) If your answer to no. 3 is yes, was such negligence a proximate cause of the injury or damage to the plaintiff? (5) If your answers to questions 1 and 2 are yes, or to questions 3 and 4 are yes, or the answer to all of the above questions are yes, then you are to answer the following question: What are the plaintiff's damages?

The jury answered "no" to questions 1 and 3. Plaintiffs complain that the special verdict improperly narrowed the issues upon which the jury could find negligence.

Rule 49(a), Utah Rules of Civil Procedure, provides, in pertinent part, as follows:

The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written interrogatories susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings

---

**12.** As explained *infra*, the jury specifically found that Dr. Lohner was not negligent in allowing Mrs. Reiser to stay on her back for an excessive period of time.

**13.** Relevant evidence is defined by Rule 1, Utah Rules of Evidence, as "evidence having any tendency in reason to prove or disprove the existence of any material fact."

**14.** Rule 45(b), Utah Rules of Evidence, provides that the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will create substantial danger of undue prejudice or of confusing the issues or of misleading the jury. See *Martin v. Safeway Stores, Inc.*, Utah, 565 P.2d 1139 (1977).

and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate.

 This Court has consistently held that the use of a "special verdict" is clearly left to the sound discretion of the trial court.[15] On the facts presented, we cannot say that the court abused its discretion. At trial, plaintiffs' basic claim of negligence was that defendant should never have allowed Mrs. Reiser to lie on her back for *any* procedure, at such late stage in her pregnancy. Defendants were also accused of negligence in the treatment of Mrs. Reiser after the cardiac arrest, to wit, her resuscitation. Although there were other supplemental issues raised, the court was within its discretion to submit the special verdict to the jury.

Plaintiffs' third contention on appeal is that the trial court erred in failing to give to the jury the issue of informed consent. They assert that Mrs. Reiser should have been advised that an amniocentesis is never performed at 38 weeks and that there was a risk of hypotensive syndrome and vasovagal syndrome. Furthermore, they claim that in a procedure involving an unborn infant, informed consent must be obtained from both parents, not only from the mother.

The trial court apparently believed that on the facts presented there was no viable issue of informed consent which would justify the giving of jury instructions thereon.

At trial, the court made the following comment:

> THE COURT: I can't see this problem, I'm sorry, no matter how you argue it. Informed consent. Okay. She should have been told there was risk involved in the procedure she underwent on June 26th. Beyond that, why would she have to be told they were doing it because they didn't do it on prior occasions? That doesn't make sense to me at all.
>
> Informed consent simply means that she has to know all the risks involved in the procedure she is about to undertake.
>
> Now, having failed to do prior procedures has nothing to do with whether or not she is informed of what's going to happen with this procedure.

 It is the settled general rule that in the absence of an emergency or unanticipated conditions, a physician must first obtain the consent of the patient before treating or operating on him.[16] The physician must inform the patient of all substantial and significant risks which might occur; yet he need not advise the patient of every conceivable risk.[17] Also, even though the informed consent may be defective, the resultant injury must have been proximately caused by the procedure administered.[18]

In the instant case, plaintiffs' contention at trial was that the cardiac arrest was caused by Mrs. Reiser lying on her back for an excessive period of time.[19] The jury

---

**15.** *Page v. Utah Home Fire Insurance Company*, 15 Utah 2d 257, 391 P.2d 290 (1964); *Hanks v. Christensen*, 11 Utah 2d 8, 354 P.2d 564 (1960).

**16.** 61 Am.Jur.2d, Physicians, Surgeons, etc., § 152.

**17.** *Ficklin v. Macfarlane*, Utah, 550 P.2d 1295 (1976). Although not in effect at the time this cause of action arose, our present statute is instructive as to the type of information considered necessary to disclose to a patient. U.C.A., 1953, 78–14–5 requires that the physician need only inform the patient of the substantial and significant risks of the procedure to be performed.

**18.** Proximate cause here is used in its usual sense in negligence cases. It has also been discussed in a more limited sense, i.e., if it can

be shown that a patient would have consented anyway, the absence of informed consent is deemed not to be causally related to a plaintiff's injury. See the concurring opinion of Justice Crockett in *Ficklin v. Macfarlane, supra.* See also, *Poulin v. Zartman*, Alaska, 542 P.2d 251 (1975) and *ZeBarth v. Swedish Hospital Medical Center*, 81 Wash.2d 12, 499 P.2d 1 (1972).

**19.** Plaintiffs' theory of the case was set forth at the beginning of trial in the following colloquy with the court:

> THE COURT: But are you going to argue that doing it [the amniocentesis] at thirty-eight weeks was a negligent act?
>
> MR. HOWARD [plaintiffs' counsel]: No. I'm going to argue having her on her back at thirty-eight weeks for any operation, any procedure was negligence.

specifically found that Dr. Lohner was not negligent in that respect. The evidence was that there have been no documented cases where a pregnant woman has experienced a cardiac arrest as a result of hypotension syndrome. It would therefore appear that plaintiffs have failed in their burden of proving proximate cause, which obviates a discussion of informed consent.

■ Assuming, *arguendo*, that proximate cause has been shown, nevertheless, the informed consent given in the instant case was adequate. Before proceeding with the amniocentesis, Dr. Lohner explained to Mrs. Reiser the usual complications and risks normally associated with the amniocentesis, including the possibilities of sticking the fetus with the needle and of inducing infection within the uterus. The believable testimony offered by the experts at trial was that other risks (such as hypotension or vasovagal syndrome) were not only minimal, but also unforeseeable.

■ Plaintiffs also contend that the father, as well as the mother, should have been consulted concerning the amniocentesis procedure. For the same reasons given *supra*, this contention must also fail. Furthermore, where a married woman is in full possession of her faculties, she alone has the power to submit to surgical procedures upon herself.[20] This general rule applies in cases involving pregnancy and childbirth.[21] This concept is explicitly expressed in our present statute:

> The following persons are authorized and empowered to consent to any health care not prohibited by law: ... (f) any female regardless of her age or marital status, when given in connection with her pregnancy or childbirth.

Later in the trial, the further colloquy ensued:
THE COURT: ... I will not submit as a special interrogatory the question of whether or not it was negligent to perform an amniocentesis at thirty-eight weeks.
MR. HOWARD: I'll agree. That's perfectly all right.

20. 61 Am.Jur.2d, Physicians, Surgeons, etc., § 161. See also, *Nishi v. Hartwell*, 52 Haw. 188, 473 P.2d 116 (1970).

We therefore conclude that on the facts presented the husband's consent was not required.

Plaintiffs' fourth and final contention on appeal is that the trial court erred in summarily dismissing plaintiffs' first and third causes of action.

■ The first cause of action (personal injury to Mrs. Reiser) was dismissed for failure to comply with the statute of limitations. The applicable statute[22] at the time this suit was filed provided that the action must be filed within "two years after the date of injury or two years after the plaintiff discovers, or through the use of reasonable diligence, should have discovered the injury, whichever occurs later." The cardiac arrest occurred on June 26, 1971, and the lawsuit was filed on May 1, 1974—nearly three years later. This cause of action was therefore properly held to be untimely.

■ The exception of *Foil v. Ballinger*[23] is not applicable here. Mrs. Reiser knew or should have known she had suffered a legal injury on June 26, 1971. She was told that her loss of memory, balance and visual problems were all a direct result of the cardiac arrest. Nevertheless, plaintiffs contend that they were entitled to a jury trial on the issue under U.C.A., 1953, 78–12–47. Said statute provides, in pertinent part, as follows:

> In any action against a physician ... if the responsive pleading of the defendant pleads that the action is barred by this statute of limitations, and if either party so moves the court, the issue raised thereby may be tried separately before any issues in the case are tried.

The statute therefore permits an independent trial on the limitation issue. It is,

21. See, e.g., *Murray v. Vandevander*, Okla. App., 522 P.2d 302 (1974), *Rosenberg v. Feigin*, 119 Cal.App.2d 783, 260 P.2d 143 (1953), *Kritzer v. Citron*, 101 Cal.App.2d 33, 224 P.2d 808 (1950); and *Barnett v. Bachrach*, D.C.App., 34 A.2d 626 (1943).

22. U.C.A., 1953, 78–12–28(3).

23. Utah, 601 P.2d 144 (1979).

however, like all other issues, subject to summary judgment if no genuine issues of material fact are raised.[24]

■■■ Mr. Reiser filed an affidavit wherein he asserted a belief that his wife's disorders were temporary and that he did not become aware of any permanent damage until June, 1972. Such declaration of his belief was not sufficient to raise an issue of fact.[25] Furthermore, the very acknowledgment that his wife was suffering disorders as a result of the incident (whether temporary or permanent) would show that plaintiffs *should have known* that they had suffered legal injury at the time of the cardiac arrest.

■■■ Plaintiffs' third cause of action (emotional distress to parents) was also summarily dismissed. It is well established in Utah that a cause of action for emotional distress may not be based upon mere negligence.[26] In *Samms*, this Court held as follows:

Our study of the authorities, and of the arguments advanced, convinces us, that conceding such a cause of action, may not be based upon mere negligence, the best considered view recognizes an action for severe emotional distress, though not accompanied by bodily impact or physical injury, where the defendant intentionally engaged in some conduct toward the plaintiff . . . .; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality. (Citing Sec. 46, 1948 Supplement to the Restatement of Torts).

In the instant case, there is not so much as an allegation that defendants intended in any way to harm plaintiffs or any one of them. The summary judgment was therefore proper.

For the foregoing reasons, the rulings and judgment of the lower court are hereby affirmed. No costs awarded.

CROCKETT, J., and ERNEST F. BALDWIN, District Judge, concur.

CROCKETT, J., participated herein prior to his retirement.

MAUGHAN, J., did not participate herein; BALDWIN, District Judge, sat.

WILKINS, J., heard the arguments, but resigned before the opinion was filed.

STEWART, Justice (dissenting):

I respectfully dissent.

I think the conclusion is inescapable that the plaintiffs have been denied a full and fair day in court. The heart of the issue is whether the trial judge's exclusion of evidence pursuant to a motion *in limine* was error. A motion *in limine*, in plain English, is a pretrial motion to exclude certain evidence. The defense contended that what apparently was strong evidence of negligence in the defendants' treatment of Mrs. Reiser's pregnancy prior to the date the amniocentesis was performed, could not have been the proximate cause of the injury and, therefore, should have been excluded. Clearly, had the proffered evidence been admitted, there would have been substantial evidence of negligence. Given Mrs. Reiser's Rh negative blood type and her prior pregnancies when she was under the care of Dr. Francis, Dr. Lohner, a partner of Dr. Francis, should have been aware of potential difficulties from the clinic records of her past pregnancies.

Pretrial motions to exclude evidence in a negligence case should be granted only when there is no question that the evidence will not be relevant. If there is an arguable position as to admissibility, the trial court will always be in a better position to rule on relevancy at trial. The trial judge, at the time he granted the motion in this case, was in a highly disadvantaged position

---

**24.** Am.Jur.2d, Limitation of Actions, § 470, and 61 A.L.R.2d 341.

**25.** *Dupler v. Yates*, 10 Utah 2d 251, 351 P.2d 624 (1960) and cases cited therein.

**26.** *Samms v. Eccles*, 11 Utah 2d 289, 358 P.2d 344 (1961); *Jeppsen v. Jensen*, 47 Utah 536, 155 P. 429 (1916).

to rule in an informed manner on the motion to exclude evidence of Mrs. Reiser's prior treatment during her pregnancy. The order read: "Plaintiff shall not present, attempt to present, or seek to have admitted, or in any way attempt to bring before the jury, directly or indirectly, any evidence relating to the following facts: (a) that an antibody titer reading was not taken by the defendants ... prior to June 24, 1971; and (b) that an amniocentesis procedure was not performed by the defendants ... prior to June 26, 1971."

Plaintiff proffered the following proof: Dr. Banner and Dr. Roche, plaintiffs' experts, would have testified that the failure to perform a titer prior to June 24, 1971, and the performance of a first and single amniocentesis on June 26, 1971, were departures from acceptable medical practice and such failure had a causal connection with the injuries sustained by Elizabeth. Dr. Banner would have also testified that, because of the low blood pressure evident on June 24, the failure to monitor the vital signs on June 26 at the time of the performance of the amniocentesis was a departure from medical standards and was causally connected to the injurious results since performing an amniocentesis at that stage in pregnancy with the patient's blood pressure at a very low level would aggravate the situation. Dr. Banner would have also testified that the benefit to be derived from the single amniocentesis compared with the risk involved was so small that it was surely negligence to perform an amniocentesis under those circumstances.

A physician has a duty to exercise that degree of care and skill considered proper by correct and accepted standards of the profession. *Forrest v. Eason*, 123 Utah 610, 261 P.2d 178 (1953). If the physician fails to exercise that legal duty of care in any particular, he is liable in tort for all damages and injuries proximately caused by the wrongful act. *Harris v. Grizzle*, Wyo., 625 P.2d 747 (1981); *Belk v. Schweizer*, 268 N.C. 50, 149 S.E.2d 565 (1966).

Once a defendant fails to exercise the requisite degree of care, the law of negligence holds that the tortfeasor must take his victim as he finds him and that the tortfeasor be held responsible for proximately caused injuries even though exacerbated by a condition of the victim not known to the tortfeasor. *Brittis v. Freemon*, 34 Colo.App. 348, 527 P.2d 1175 (1974). The pertinent inquiry is not whether the actual harm sustained was of a particular kind which was expected, but rather whether the harm fell within the general field of danger to plaintiff. *Adams v. State*, 71 Wash.2d 414, 429 P.2d 109 (1967). Although negligence involves a recognizable danger which is apparent, or should be apparent, to one in defendant's position, it is not required that a defendant should have foreseen the particular injury, the exact extent of the harm, or the precise manner in which it occurred. *Endresen v. Allen*, Wyo., 574 P.2d 1219 (1978). A defendant may not justify negligence on the ground that a particular result, although within the general scope of the risk created, has not before occurred.

Plaintiffs allege that the proffered evidence of negligent treatment leads to the conclusion that the placement of Mrs. Reiser in a supine position during an unnecessary and potentially dangerous medical procedure was the proximate cause of the injury. The contention is that putting Mrs. Reiser in that position was dangerous at her stage of pregnancy, and led to a condition known as supine hypotensive syndrome, a condition which women in their late stages of pregnancy may develop. Plaintiffs also claim that this led to Mrs. Reiser's cardiac arrest which produced the anoxia causing the infant's brain damage. Whether the injuries suffered and the damages incurred were the proximate result of the negligent treatment was clearly a factual issue for the jury. *Jensen v. Mountain States Tel. and Tel. Co.*, Utah, 611 P.2d 363 (1980). In excluding that evidence, the trial court denied plaintiffs their right to a jury trial.

Defendant argues that the jury's finding that Dr. Lohner was not negligent in allowing Mrs. Reiser to stay on her back for a long period of time during the amniocentes-

is destroys the critical link in plaintiffs' alleged chain of causation and renders acts of defendants prior to that point irrelevant. The argument begs the issue. A jury cannot make a proper determination as to negligence unless it is allowed to evaluate the benefits reasonably expected to be gained from a given medical procedure versus the risks to which a patient is subjected as a result of that procedure. Negligence occurs when the gravity and likelihood of danger outweigh the utility of the conduct. *Weirum v. RKO General, Inc.*, 15 Cal.3d 340, 123 Cal.Rptr. 468, 539 P.2d 36 (1975). The jury in the instant case, without the proffered testimony of plaintiffs' experts, simply could not properly evaluate Dr. Lohner's actions. Withholding the evidence in question prevented consideration of relevant factors in determining whether defendant was negligent.[1]

Furthermore, it is of crucial importance that the theories presented by defendants' experts to explain the causes of Mrs. Reiser's injuries were inextricably intertwined with the administration of the amniocentesis. Defendants' experts presented various commonly known reactions to procedures such as the one Mrs. Reiser underwent which could have caused the cardiac arrest.

Although defendants admit that an amniocentesis can lead to supine hypotensive syndrome, they claim that neither amniocentesis nor supine hypotensive syndrome has ever been reported to have resulted in cardiac arrest. But that does not resolve the issue in light of evidence proffered by plaintiffs' expert that amniocentesis is virtually never administered under circumstances similar to those existing at the time Mrs. Reiser was subjected to the test. In all events, the issue was unquestionably a factual issue for the jury as to which plaintiffs' expert's testimony was highly relevant.

Furthermore, the issue of lack of consent was also seriously prejudiced by the exclusion of plaintiffs' evidence. Uninformed consent to a medical procedure is tantamount to no consent at all. *Dale v. State*, 44 A.D.2d 384, 355 N.Y.Supp.2d 485 (1974). Plaintiffs' evidence, had it not been excluded, would have cast great doubt upon the advisability of the procedure and any benefit to be gained therefrom. The nature of the risk was never made apparent to Mrs. Reiser so as to enable her to give an informed consent. See *Ficklin v. Macfarlane*, Utah, 550 P.2d 1295 (1976). If in fact the procedure is virtually never administered at that stage and under the conditions of Mrs. Reiser's pregnancy, and the benefits to be gained therefrom were at best minimal, Mrs. Reiser's lack of this knowledge would have indeed rendered her consent uninformed.

The Court also misapplies *Foil v. Ballinger*, Utah, 601 P.2d 144 (1979). In that case the Court stated that the two-year statute of limitations "does not commence to run until the injured person knew or should have known that he had sustained an injury *and that the injury was caused by negligent action.*" *Id.* at 148 [emphasis added]. In *Foil*, as in the instant case, the plaintiff knew that she had suffered a physical injury which was apparently related to a medical procedure. In neither *Foil* nor in this case, however, was there an obvious reason for a layman to suppose that the injury was attributable to negligence on the part of the physician. Yet, in this case, the majority asserts the wholly factual proposition that the "plaintiff should have known" that she "had suffered legal injury at the time of the cardiac arrest." Why she should have known that the cardiac arrest was a result of negligence is simply not explained nor is it explainable. I think the conclusion inescapable that the issue should have been submitted to a trier of fact and that *Foil* was misapplied in this case.

1. In support of the jury's finding of no negligence, defendants suggested other activities which would have likewise caused Mrs. Reiser to be placed in a similar position: sleeping, undergoing general examination, and giving birth. Plaintiffs, however, are quick to point out that Mrs. Reiser would not necessarily be required to lie completely flat for any of the above-mentioned activities. In any event, the argument underscores the impropriety of excluding plaintiffs' evidence.

This Court has previously determined that if a person who exercises reasonable diligence does not know of an injury, the statute of limitations for a malpractice action does not begin to run against him, *Christensen v. Rees,* 20 Utah 2d 199, 436 P.2d 435 (1968). Similarly, a plaintiff who does not know or have reasonable grounds for knowing that a known injury was caused by unknown negligence, the two-year statute of limitations for a malpractice action does not begin to run, *Foil v. Ballinger, supra.* Simple awareness of an injury that might have been an unavoidable consequence of the medical treatment, or the result of some other cause, or even a temporary side effect of treatment, is not tantamount to knowledge that the injury was the result of improper treatment. As stated in *Foil v. Ballinger, supra,* at 147:

> Because of the nature of malpractice actions, and based on prior Utah law, we hold that the statute begins to run when an injured person knows or should know that he has suffered a legal injury. We base this holding on several grounds. In the health care field it is typically the case that there often is a great disparity in the knowledge of those who provide health care services and those who receive the services with respect to expected and unexpected side effects of a given procedure, as well as the nature, degree, and extent of expected after effects. *While the recipient may be aware of a disability or dysfunction,* there may be, to the untutored understanding of the average layman, no apparent connection between the treatment provided by a physician and the injury suffered. Even if there is, *it may be passed off as an unavoidable side effect or a side effect that will pass with time.* [Emphasis added.]

In Mrs. Reiser's affidavit in opposition to the summary judgment, an affidavit not referred to in the majority opinion, she stated that she was unaware of the extent of the injury suffered until June, 1972, and that she had been under a physician's care for the trauma suffered as a consequence of the cardiac arrest; however, she was not advised by the physician of the permanency of the neurological damage until June of 1972. That there was a factual issue as to her knowledge of the nature, extent, severity and permanency of her injury is hardly debatable.

This action is not to recover for temporary side effects discovered shortly after June 26, 1971. Rather, she is seeking damages for a permanent and severe injury, an injury of which she was not aware according to her affidavit until June of 1972. Neither *Dupler v. Yates,* 10 Utah 2d 251, 351 P.2d 624 (1980) nor the cases cited therein and referred to in the majority opinion justify the conclusion that plaintiff's affidavit failed to establish an issue of fact. Basic principles of civil procedure provide that the party opposing a motion for summary judgment is entitled to the benefit of all favorable inferences, *Durnham v. Margetts,* Utah, 571 P.2d 1332 (1977), and that affidavits in opposition to a motion for summary judgment are to be liberally construed against summary judgment. *Sutton v. Brown,* 85 Idaho 104, 375 P.2d 990 (1962); *Chilson v. P. G. Industries,* 174 Cal.App.2d 613, 344 P.2d 868 (1959). Considering the contents of Mrs. Reiser's affidavit in light of the above analysis, I find the conclusion inescapable that plaintiffs were entitled to a trial on the issue of the running of the statute of limitations pursuant to Utah Code Ann., 1953, § 78–12–47.