Cheryl DUERDEN, Plaintiff,

v.

UTAH VALLEY HOSPITAL and Betty
Clark, Defendants.

Civ. No. C85–969G.

United States District Court,
D. Utah,
Central Division.

June 25, 1987.

Fred R. Silvester, Salt Lake City, Utah,
for plaintiff.

Larry R. White, Salt Lake City, Utah, for
defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on May 21, 1987, pursuant to defendants' Renewal of Motion for Directed Verdict and Motion for Judgment Notwithstanding the Verdict. Cheryl Duerden was represented by Fred R. Silvester. Utah Valley Hospital and Betty Clark were represented by Larry R. White. Both parties submitted memorandums and presented extensive oral argument after which the matter was taken under advisement. The court being now fully advised sets forth its Memorandum Decision and Order. For the reasons stated below, defendants' motion is granted. The judgment entered in this case on April 16, 1987, in accordance with the jury's verdict is vacated, and judgment is hereby entered in defendants' favor.

## FACTS

Cheryl Duerden brought suit against Utah Valley Hospital and Betty Clark to recover damages for a permanent physical disability known as a hypotonic areflexic bladder. Mrs. Duerden suffers this condition as a result of improper medical treatment she received in connection with the birth of her second child. The facts which became clearly established at trial are as follows:

On July 14, 1982, Cheryl Duerden was admitted to Utah Valley Hospital in connection with the birth of her second child. Early in the morning of July 15, after delivering a large baby, Mrs. Duerden was having difficulty voiding her bladder and complained of discomfort to the nurses on duty at the hospital. Nurse Betty Clark

catheterized Mrs. Duerden in what defendants admit was a negligent manner. Later that morning, Mrs. Duerden complained to a teaching nurse who was visiting the hospital. The teaching nurse properly placed a catheter and it immediately returned approximately 1650 ccs of urine, which is approximately two to three times the normal amount. That same day Mrs. Duerden's treating physician advised her that the catheter had been placed improperly and that consequently her bladder had become distended. She was told that the treatment she had received was "inappropriate" and that she would have difficulty urinating for a period of time. The doctor said that the catheterization was so bad and inappropriate that she shouldn't pay her bill. The doctor also said that in his opinion the condition was temporary and that her bladder soon would return to normal. Upon further examination by her family physician shortly after release from the hospital, Mrs. Duerden was again advised that the condition was temporary. Mrs. Duerden testified that in those early days she knew she had been treated improperly, but based largely upon the advice of her physician she believed the condition was only temporary and that in time it would improve. Mr. Duerden's testimony was to the same effect.

Mrs. Duerden's condition, however, did not improve. She continued to have trouble urinating without applying manual pressure to her abdomen. Sometime in April 1983, Mrs. Duerden suffered a severe lower urinary tract infection and sought treatment for that condition. Infections recurred and Mrs. Duerden eventually made her way to Dr. William B. Gill. Early in 1985 Dr. Gill performed a number of tests and diagnosed Mrs. Duerden as suffering from a hypotonic areflexic bladder, a permanent condition for which there is no treatment. On April 4, 1985, Mrs. Duerden filed a notice of intent to commence suit as prescribed in Utah Code Ann. § 78–14–8 (Supp.1986). Trial of Mrs. Duerden's suit before a jury commenced on April 14, 1987. The jury returned a verdict for the plaintiff and found that the plaintiff had incurred damages of $60,000. After the jury re-turned its verdict, pursuant to Rule 50 of the Federal Rules of Civil Procedure, the defendant moved for judgment notwithstanding the verdict.

## ANALYSIS

Defendants contend that the court should grant judgment notwithstanding the verdict because plaintiff's cause of action is time-barred. Defendants argue that plaintiff's own evidence shows that within a few weeks after giving birth, plaintiff gained all the knowledge necessary to start the statute of limitations, but that plaintiff did not initiate suit until some thirty-one months after acquiring that knowledge.

*Standard of Review*

■ The Court's jurisdiction in this case is based upon diversity of citizenship of the parties, 28 U.S.C. § 1332(a). Accordingly, the substantive law of Utah governs the underlying cause of action. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, federal law governs in assessing whether a judgment notwithstanding the verdict should be granted. *Hurd v. American Hoist & Derrick Co.*, 734 F.2d 495, 498 (10th Cir.1984). When, as in this case, a motion for judgment notwithstanding the verdict is based upon assertion of an affirmative defense, it should be granted only if the moving party has presented such evidence that, without weighing the credibility of the witnesses, the only reasonable conclusion is in that party's favor. *Giandonato v. Sybron Corp.*, 804 F.2d 120, 122–23 (10th Cir.1986); *see also Hurd*, 734 F.2d at 498; *Peterson v. Hager*, 724 F.2d 851, 853–84 (10th Cir. 1984); *Thompson v. Kerr-McGee Refining Corp.*, 660 F.2d 1380, 1389 (10th Cir.1981); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2524 at 543 (1971).

*Knowledge of a Legal "Injury"*

The question presented in this case concerns the nature and extent of knowledge of a sustained injury necessary under Utah law to commence running of the medical

malpractice statute of limitations. The applicable statute of limitations provides:

> (1) No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient *discovers, or through the use of reasonable diligence should have discovered the injury,* whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence.

.    .    .    .    .

Utah Code Ann. § 78–14–4 (emphasis added). In *Foil v. Ballinger,* the Utah Supreme Court determined that the statute of limitations in medical malpractice actions begins to run "when an injured person knows or should know that he has suffered a *legal* injury." 601 P.2d 144, 147 (Utah 1979) (emphasis added). The court interpreted the term "injury" in the statute to mean "legal injury," and explained that a legal injury is discovered when a plaintiff knows or should have known (1) that he or she has sustained an injury, and (2) that the injury was caused by negligence.[1] *Id.* at 148. Perhaps the most typical problem encountered in applying the *Foil* test has to do with its second prong, that is, discovery of the existence of negligence in connection with a known injury. In this case, however, knowledge of negligence is a given.[2] This case concerns the first prong of the *Foil* test. Essentially, the question here is, when is the knowledge of injury sufficient to satisfy the statutory test that the patient "discovers, or through the use of reasonable diligence should have discovered" that injury?

Plaintiff argues that since her cause of action is to recover damages only for her *permanent* condition of "hypotonic areflexic bladder," the relevant knowledge of injury for purposes of the statute is knowledge of the diagnosed condition of hypotonic areflexic bladder. The date that plaintiff knew or should have known she had sustained that injury, plaintiff argues, was a question of fact properly submitted to the jury, and the court should not now disturb the jury's determination. Defendant, on the other hand, contends that plaintiff need not know she suffered that specific injury in order to commence the running of the statute for purposes of this litigation. Plaintiff does not dispute that within weeks of giving birth she knew that she had been negligently catheterized and that she was suffering some disability or dysfunction as a result of that negligence. Defendant contends that no more is necessary under Utah law to trigger the statute. Defendant maintains that plaintiff's lack of knowledge of the full extent or permanent nature of her injury and her positive belief of its temporary nature did not prevent the statute from running.

The Utah Supreme Court's only pronouncement relevant to this question was made in *Reiser v. Lohner,* 641 P.2d 93 (Utah 1982). In that case Mrs. Reiser had suffered cardiac arrest after undergoing amniocentesis in connection with the birth of her sixth child. As a result of the cardiac arrest, Mrs. Reiser suffered loss of memory and balance, and visual problems.[3] The trial judge granted summary judgment on the cause of action under which the Reisers sought damages for Mrs. Reiser's personal injuries, ruling that the statute of limitations had run as to all her claims. On

---

1. In *Hove v. McMaster,* 621 P.2d 694 (Utah 1980), the court appears to have broadened this standard with respect to the second prong of the test. The court held that the "knowledge of negligence" prong of the *Foil* test was satisfied if the plaintiff "knew or should have known within two years from the date of the [injury] that the injury she suffered *may have been caused* by negligence on the part of defendant." *Id.* at 697 (emphasis added). Under *Hove* a plaintiff need only know of the *possibility* of a connection between her injury and the negligent act.

2. Mrs. Duerden in essence admitted she knew of the defendant's negligence and the connection between the negligence and her distended bladder. She was told soon after giving birth that the care she received was substandard, and that it was the cause of her discomfort and urinary problems.

3. Mrs. Reiser's child was born with severe brain damage, and was diagnosed as suffering cerebral palsy and spastic quadriplegia. The Reiser's suit sought damages in separate causes of action for injuries to the child, as well as to themselves.

appeal, the Utah Supreme Court affirmed the trial court, stating,

> The first cause of action (personal injury to Mrs. Reiser) was dismissed for failure to comply with the statute of limitations.... The cardiac arrest occurred on June 26, 1971, and the lawsuit was filed on May 1, 1974—nearly three years later. This cause of action was therefore properly held to be untimely.
>
> The exception of *Foil v. Ballinger* is not applicable here. Mrs. Reiser knew or should have known she had suffered a legal injury on June 26, 1971. She was told that her loss of memory, balance and visual problems were all a direct result of the cardiac arrest.... [The statute of limitations issue is] like all other issues, subject to summary judgment if no genuine issues of material fact are raised. Mr. Reiser filed an affidavit wherein he asserted a belief that his wife's disorders were temporary and that he did not become aware of any permanent damage until June, 1972. Such declaration of his belief was not sufficient to raise an issue of fact. *Furthermore, the very acknowledgment that his wife was suffering disorders as a result of the incident (whether temporary or permanent) would show that plaintiffs should have*

*known that they had suffered legal injury at the time of the cardiac arrest.* *Id.* at 99–100 (emphasis added). Under *Reiser,* the threshold knowledge the injured party must have to satisfy the first prong of the *Foil* test is knowledge that she is suffering a "disorder." Under this view, the statute begins to run upon acquisition of such knowledge, whether or not the injured party is aware of the extent of her injury, the actual malady suffered, or the permanent nature of her symptoms. In *Reiser,* the court rejected as insufficient to create an issue of fact (as to when the statute began to run) both Mr. Reiser's statements that he did not become aware of any permanent damage until long after Mrs. Reiser's cardiac arrest, and Mr. and Mrs. Reiser's asserted belief that the disorders were only temporary. *Id.* at 100, 103. The court pointedly stated that knowledge that one is suffering disorders whether *temporary or permanent* is sufficient to start the statute running.[4] *Id.* at 100. Justice Stewart registered a well reasoned and persuasive dissent in *Reiser,* arguing that a plaintiff must have knowledge of the injury for which recovery is sought, as well as some appreciation of the nature and extent of her injury to trigger the running of the statute.[5] But the majority rejected

---

4. Other courts have used damages concepts to analyze the problem. These courts have held that a cause of action accrues when a plaintiff has knowledge of actual appreciable harm as distinguished from nominal damages. *E.g. Gazija v. Nichols Jerns Co.,* 86 Wash.2d 215, 219, 543 P.2d 338 (1975). Nominal damages are "damages awarded for the infraction of a legal right, where the extent of loss is not shown, or where the right is one not dependent upon loss or damage...." C. McCormick, *Damages* § 20 at 85 (1935). Nominal damages are contrasted with small compensatory damages "which are measured by the loss actually suffered." *Id.* § 21 at 87; *see also Davies v. Krasna,* 14 Cal.3d 502, 121 Cal.Rptr. 705, 535 P.2d 1161 (1975).

5. In dissent Justice Stewart argued that *Foil v. Ballinger* and *Christiansen v. Rees,* 20 Utah 2d 199, 436 P.2d 435 (1968) require inquiry into the plaintiff's knowledge of the nature, extent, severity and permanency of her injury. In *Foil v. Ballinger* the court stated,

> In the health care field it is typically the case that there often is a great disparity in knowledge of those who provide health care services and those who receive the services

with respect to expected and unexpected side effects of a given procedure, as well as the nature, degree, and extent of expected after effects. *While the recipient may be aware of a disability or dysfunction,* there may be, to the untutored understanding of the average layman, no apparent connection between the treatment provided by a physician and the injury suffered. *Even if there is, it may be passed off as an unavoidable side effect or a side effect that will pass with time.*

601 P.2d at 147 (emphasis added). Justice Stewart would require knowledge of more than a mere disorder in order to trigger the statute of limitations:

> In Mrs. Reiser's affidavit in opposition to the summary judgment, an affidavit not referred to in the majority opinion, she stated that she was unaware of the extent *of the injury suffered until June, 1972, and that she had been under a physician's care for the trauma suffered as a consequence of the cardiac arrest; however, she was not advised by the physician of the permanency of the neurological damage until June of 1972. That there was a factual issue as to her knowledge of the nature, extent,*

Justice Stewart's position in spite of strong policy considerations which might have indicated a contrary result.[6] Other courts, in reaching similar results, have relied upon the need for one statute of limitations to govern all injuries flowing from an admittedly negligent act. *See Withers v. Sterling Drug, Inc.,* 319 F.Supp. 878, 881 (S.D. Ind.1970).

The rule that the statute runs upon acquisition of knowledge of disability or dysfunction, whether temporary or permanent, resulting from negligence, appears to have been adopted by a number of Utah's sister jurisdictions. For instance, in *Steele v. Organon, Inc.,* 43 Wash.App. 230, 716 P.2d 920 (1986) the plaintiff suffered ergot poisoning after taking a negligently prescribed dosage of the medication. Plaintiff was hospitalized and treated for the overdose and appeared to have no permanent injuries. Since insurance covered most of the costs of the hospitalization the plaintiff, in consultation with her attorney, decided against a lawsuit. Later, however, plaintiff suffered a heart attack and a stroke related to the overdose. Measured from the time of the first hospitalization plaintiff's claim was time-barred before the occurrence of the later injuries. The Washington Court of Appeals ruled that the statute began running from the time of the first injury. The court stated,

> Although Mrs. Steele may have considered the *amount* of her damages small in 1975, nevertheless, it is uncontroverted she was aware of some injury. Early on, she had suffered actual and appreciable damages resulting from the drug overdose, i.e., she experienced loss of sensation in her arms and legs and

required hospital care. Thus, the trial court was correct when it determined Mrs. Steele knew all of the elements of a cause of action in 1975.

In her second contention Mrs. Steele argues the 1981 heart attack and 1982 stroke are separate and distinct injuries from the 1973 injury. She maintains that a separate cause of action exists for the latter injuries and that this cause did not accrue until the injuries became manifest in 1981–82. Hence, she reasons the statute of limitation for that cause of action had not run so as to bar this action. We find, however, the rationale rejecting the previous issue applies to this argument, as well.

*Id.* 716 P.2d at 923; *see also Davies v. Kiasna,* 14 Cal.3d 502, 121 Cal.Rptr. 705, 535 P.2d 1161 (1975); *Guiley v. Hammaker,* 55 Or.App. 921, 640 P.2d 664 (1982); *Withers v. Sterling Drug, Inc.,* 319 F.Supp. 878, 881 (S.D.Ind.1970); *Gustavson v. United States,* 655 F.2d 1034, 1036 (10th Cir.1981) (decided under the Federal Torts Claims Act); *Robbins v. United States,* 624 F.2d 971, 972–73 (10th Cir.1980) (decided under the Federal Torts Claims Act).

*Application in this case*

■ Since under Utah law a plaintiff need not know the full nature, extent, severity or permanency of an injury to have knowledge of "legal injury" necessary to commence the running of the statute of limitations, the jury's verdict in this case must be set aside. There is no dispute that within a few weeks of giving birth plaintiff knew she had sustained a disability or dysfunction related to her negligent treatment.

severity and permanency of her injury is hardly debatable.

*Id.* at 103 (Stewart, J., dissenting) (emphasis added). Justice Stewart also focused on injuries for which recovery is sought and distinguished them from "temporary side effects" in much the same way as plaintiffs in this case have done. He stated, "[t]his action is not to recover for temporary side effects discovered shortly after June 26, 1971. Rather, [plaintiff] is seeking damages for a permanent and severe injury, an injury of which she was not aware according to her affidavit until June of 1972." *Id.*

**6.** The court's ruling in *Reiser* may undercut the policies the court identified as driving its construction of Utah Code Ann. § 78–14–4 in *Foil,* 601 P.2d at 148. The ruling may encourage persons who experience minor or temporary injuries, dysfunctions, or ailments to file lawsuits to prevent the statute of limitations from running on the chance that the full extent of the ailment has not been discovered. In addition, it may encourage health care providers to fail to advise patients of the full extent of their injuries in the hope that the running of the statute of limitations would make a valid cause of action nonactionable.

The statute of limitations began running at that point with respect to all injuries plaintiff may have sustained arising out of that negligent episode. Accordingly, her cause of action was time-barred under Utah Code Ann. § 78–14–4, some eight months before she filed her Notice of Intent to Commence Malpractice Action.

This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.