2010 UT App 55

Sharlene CALL, Plaintiff and Appellee,

v.

John E. KEITER, M.D., Defendant and Appellant.

No. 20090051–CA.

Court of Appeals of Utah.

March 11, 2010.

Christian W. Nelson, Zachary E. Peterson, Anne D. Armstrong, and Tawni J. Anderson, Salt Lake City, for Appellant.

Don R. Petersen, D. David Lambert, and Leslie W. Slaugh, Provo, for Appellee.

Before Judges DAVIS, VOROS, and BENCH.[1]

## OPINION

BENCH, Senior Judge:

¶ 1 Defendant John E. Keiter (Doctor) appeals the trial court's denial of his motions for summary judgment, apportionment of fault, and directed verdict in a medical malpractice suit brought against him by Plaintiff Sharlene Call (Patient). We decline to address the directed verdict issue because Doctor has not marshaled the evidence. *See generally Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 33, 31 P.3d 557. We affirm the trial court's denial of Doctor's motions for summary judgment and apportionment of fault.

## BACKGROUND

¶ 2 Patient was born with a chest deformity called pectus excavatum, also known as sunken chest syndrome. Her first reconstructive surgery for this condition was performed when she was three years old. In 1981, when Patient was in her early twenties, Doctor first treated Patient by modifying the original reconstructive surgery. Doctor also performed breast augmentation surgery, inserting silicone implants so that Patient's chest would protrude more normally.

¶ 3 In 1995, after fourteen years without incident, Patient felt a pop in her left breast while being hugged. Later, upon feeling some lumpiness in her left breast, Patient returned to Doctor, who confirmed that the left implant had ruptured and was leaking silicone. Doctor performed surgery, removing a silicone granuloma—a mass of inflamed tissue that forms around silicone. Doctor also replaced both silicone implants with saline implants. In removing the left silicone

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment pursuant to Utah Code section 78A–3–103(2) (2008) and rule 11–201(6) of the Utah Rules of Judicial Administration.

implant, Doctor did not remove its surrounding scar tissue capsule, which had collapsed and remained in Patient's left breast. Following this surgery, Doctor informed Patient that he was unable to remove all of the residual silicone and warned her that more silicone granulomas could form in the future. In 1999, Patient found another lump in her left breast. Doctor performed surgery, removing another silicone granuloma. During this surgery, Doctor also removed Patient's left saline implant, cleaned it, and reinserted it.

¶ 4 In 2000, Patient sought treatment from Doctor for a small, discolored hole that had developed below her left breast. On December 18, 2000, Doctor performed another surgery wherein he removed, cleaned, and reinserted the left saline implant and attempted to close the small, discolored hole. A culture obtained from this surgery indicated the presence of staphylococcus epidermidis—a staphylococcus bacteria that is commonly present on the skin and typically harmless but can become more virulent when present inside the body. Shortly after this surgery, the hole reopened to about the size of a quarter or fifty-cent piece, exposing the saline implant to view. On December 28, 2000, during an in-office procedure, Doctor determined that the implant had to be removed and decided to drain and remove the implant through the hole. As Doctor attempted to drain the implant by puncturing it with a needle, he hit and drained a large pocket of infection. Once the implant had been drained and removed, Doctor did not take any additional measures to determine the cause of the hole, such as requesting another culture or performing a more invasive procedure to explore the interior of Patient's left breast. Doctor did not prescribe any additional antibiotics or other medications following this procedure, instead telling Patient to complete the remainder of her antibiotic prescription from the previous surgery, of which prescription there were only three days left.

¶ 5 The wound took several months to heal. During this time, Patient suffered from fever, night sweats, and pain and complained of bad-smelling drainage seeping out of the hole. Patient also had a difficult time contacting Doctor. When she finally managed to see Doctor in February 2001, the hole had still not healed, remaining two to three inches deep and the size of a fifty-cent piece. Doctor told Patient to clean the wound using peroxide and a Q-tip. When this treatment did not prove effective, Patient continually attempted to contact Doctor. She was told by Doctor's staff to be patient and continue the peroxide and Q-tip treatment. By May 2001, the wound closed and appeared to have healed, and Doctor determined that he could attempt to insert another implant.

¶ 6 In August 2001, Doctor performed surgery to insert a new saline implant into Patient's left breast. During this surgery, Doctor noted that a white substance consistent with silicone was present in Patient's breast tissue; however, Doctor merely observed this silicone and made no attempt to remove it. Within a couple months, Patient discovered that another hole had formed in the same location. In October 2001, Doctor removed the latest implant through the hole. Shortly thereafter, Patient sought treatment from other doctors.

¶ 7 In October 2002, Patient commenced this action by serving Doctor with a notice of intent to commence action. Patient then filed her complaint against Doctor for medical malpractice in April 2003.

¶ 8 In support of her claims, Patient presented expert testimony from Dr. Robert T. Miner (Expert). In forming his opinions, Expert evaluated Doctor's course of treatment of Patient since 1995. Expert considered the rupture of Patient's silicone implant and explained that the scar tissue capsule and residual silicone are both a potential nidus or nest for bacteria. If not properly removed, Expert explained, these materials could become a host for a latent, recurring infection. Expert opined that by removing the scar tissue capsule—a procedure called a capsulectomy—much of the residual silicone remaining encapsulized could also be removed. However, Expert allowed that it would be impossible to remove all of the residual silicone, especially if the scar tissue capsule had not remained intact and the silicone had leaked into the surrounding breast tissue.

¶ 9 Expert also considered the hole that developed on the bottom of Patient's left breast in December 2000 and explained that such a hole surrounded by discolored tissue is a "classic" sign of implant extrusion, wherein the body pushes out a foreign object, typically in response to an infection. Expert further considered the second extrusion in October 2001—following Doctor's determination in May 2001 that Patient's wound had healed—and explained that if an infected area is not properly cleaned, the skin may heal over an infection, sealing it inside.

¶ 10 Based on these evaluations, Expert opined that Doctor's treatment of Patient's infection fell below the applicable standard of care. First, Expert testified that in December 2000, Doctor should have identified the hole as an implant extrusion due to infection. In forming this opinion, Expert was critical of Doctor's lack of concern about and investigation into Patient's symptoms. Second, Expert testified that Doctor should have known that the scar tissue capsule was present in Patient's left breast and recognized its potential as a host for a latent, recurring infection. Third, Expert testified that before ever inserting another implant, Doctor should have cleaned out the infected area by performing a capsulectomy then draining the wound to prevent the skin from healing over the infected area. Consistent with his opinion that Doctor should have cleaned the infected area, Expert similarly testified that Doctor should have removed the accessible silicone he identified during the August 2001 surgery when he had the opportunity to do so. Ultimately, Expert opined that by inserting a new implant in August 2001, before taking appropriate measures to clean out the infected area, Doctor had virtually ensured that the new implant would be compromised by extrusion due to an infection.[2]

¶ 11 Doctor moved for summary judgment, arguing that Patient's claims are barred by the two-year statute of limitations for medical malpractice actions. In so arguing, Doctor characterized Patient's claims as arising entirely out of the ruptured silicone implant and subsequent removal of residual silicone, and he therefore asserted that the statute of limitations began running in the 1990s. Patient responded that her claims are for Doctor's failure to properly treat her infection in December 2000.

¶ 12 The trial court denied Doctor's motion for summary judgment, finding that Patient sought "to recover damages for allegedly negligent medical treatment rendered by [Doctor] only on and/or after December 18, 2000," and concluding that these claims "remain viable at this time." The trial court agreed to allow Patient to present evidence of treatment she received from Doctor prior to December 18, 2000, reasoning that this evidence was relevant background information of Patient's medical history that would be helpful to the jury. The trial court also explicitly stated that Doctor could renew his argument should the evidence show that Patient's claims are barred by the statute of limitations.

¶ 13 The case was tried before a jury. Consistent with its summary judgment ruling, the trial court limited the evidence presented of treatment Patient received from Doctor prior to December 18, 2000, to neutral background history. The jury was instructed that "[a]ny information or evidence presented regarding care [Patient] received from [Doctor] prior to December 18, 2000 has been presented for background information only." Further, the trial court instructed that the jury could "not ... consider this information as part of [Patient's] claims [for negligence] in this case." Before the case was submitted to the jury, Doctor moved for the use of a special verdict form, which would allow the jury to apportion fault to the manufacturer of the silicone implants. The trial court denied Doctor's request for a special verdict form, reasoning that there was no basis for apportionment, given the substance of Patient's claims. The case was decided by the jury, which found in favor of Patient. Doctor appeals.

---

**2.** Expert was also critical of Doctor's reuse of a contaminated implant in December 2000, Doctor's failure to prescribe aggressive antibiotics following the December 2000 extrusion, and what Expert described as Doctor's abandonment of Patient between December 2000 and May 2001.

ISSUES AND STANDARDS OF REVIEW

¶ 14 Doctor challenges the trial court's denial of his motion for summary judgment, alleging that Patient's claims are barred by the medical malpractice statute of limitations. *See generally* Utah Code Ann. § 78B–3–404(1) (2008)[3] ("A malpractice action against a health care provider shall be commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs...."). A trial court must grant summary judgment if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "We review a trial court's grant [or denial] of summary judgment for correctness, according no deference to the trial court's legal conclusions." *Harper v. Evans*, 2008 UT App 165, ¶ 7, 185 P.3d 573. "In so doing, we view the facts and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* "Further, the applicability of a statute of limitations ... [is a] question[ ] of law, which we review for correctness." *Id.* (alteration omitted) (internal quotation marks omitted).

¶ 15 Doctor also challenges the trial court's denial of his request for a special verdict form to apportion fault to the manufacturer of the silicone implants. *See generally* Utah Code Ann. § 78B–5–819(1) (2008) ("The trial court may, and when requested by any party shall, direct the jury, if any, to find separate special verdicts determining the total amount of damages sustained and the percentage or proportion of fault attributable to [any person allowed under this section] for whom there is a factual and legal basis to allocate fault."). The applicability of section 78B–5–819 is a question of law, reviewed for correctness. *See Bishop v. GenTec, Inc.*, 2002 UT 36, ¶ 8, 48 P.3d 218 ("The application of the [Liability Reform Act] in apportioning fault is a legal question of statutory construction, which we review for correctness."); *see also* Utah Code Ann. § 78B–5–819 (stating that "when requested by any party," and supported by "a factual and legal basis," the trial

court "shall" direct the jury to apportion fault).

## ANALYSIS

### I. Summary Judgment

¶ 16 Doctor contends that the trial court erred in denying his motion for summary judgment, alleging that Patient's claims are barred by the medical malpractice statute of limitations. In alleging that Patient's claims are barred by the statute of limitations, Doctor raises various arguments concerning the discovery rule, the one-action rule, the continuous negligent treatment rule, and the inadequacy of Patient's complaint, each of which we will address.

### A. Discovery Rule and One–Action Rule

¶ 17 Doctor first argues that Patient's claims are barred by the statute of limitations by attempting to invoke both the discovery rule and the one-action rule.

¶ 18 Under the discovery rule, Utah's two-year medical malpractice statute of limitations, *see* Utah Code Ann. § 78B–3–404(1), does not begin to run until a plaintiff has discovered a "legal injury," requiring discovery of both "the 'injury and the negligence which resulted in the injury.' " *Daniels v. Gamma W. Brachytherapy LLC*, 2009 UT 66, ¶ 25, 221 P.3d 256 (quoting *Foil v. Ballinger*, 601 P.2d 144, 148 (Utah 1979)). Further, a plaintiff must have suffered "actual damages" or actual harm caused by a legal injury to have an actionable "legally cognizable injury." *Medved v. Glenn*, 2005 UT 77, ¶¶ 11–14, 125 P.3d 913. Under the one-action rule, once a plaintiff brings a claim for a legal injury, that plaintiff must seek damages for harm actually suffered as well as for future harm. *See id.* ¶ 14 ("Under [the one-action] rule, once a plaintiff suffers an actionable injury, she is entitled to recover damages not only for harm already suffered, but also for that which will probably result in the future[, for] a plaintiff's failure to seek future damages in such a situation may very well preclude any subsequent attempts at recovery."); *Seale v. Gowans*, 923 P.2d 1361, 1364

---

**3.** For the reader's convenience, we cite to the     current version of the Utah code.

(Utah 1996) ("[O]nce some injury becomes actionable, a plaintiff must plead all damages, both present and future, and cannot thereafter bring another action once future harm occurs."). And if a plaintiff fails to bring a claim for a legal injury within the limitations period, that plaintiff may not later sue for subsequently arising harm caused by that same legal injury. *See Duerden v. Utah Valley Hosp.*, 663 F.Supp. 781, 782–84 (D.Utah 1987) (stating that the running of the statute of limitations is not delayed until "the injured party [becomes] aware of the extent of her injury" or "the permanent nature of her symptoms" because "knowledge that one is suffering from disorders whether temporary or permanent is sufficient to start the statute running" (emphasis omitted)); *Reiser v. Lohner*, 641 P.2d 93, 100 (Utah 1982) (stating that a belief that the harm caused by a legal injury is merely temporary and not permanent does not delay the running of the statute of limitations until the more permanent harm is discovered).

¶ 19 Doctor characterizes Patient's claims as arising out of the rupture of the silicone implant, identifying her legal injury and resulting harm as being the negligent removal of silicone. Doctor alleges that the residual silicone caused Patient's infection, identifying the infection as a subsequent harm caused by this single legal injury. Accordingly, Doctor argues that the statute of limitations began to run on Patient's claims when the silicone was first removed. Doctor further asserts that Patient's presentation of her claims for later treatment violates Utah's one-action rule, arguing that Patient impermissibly attempts to split her claims by bringing an action for harm caused by a legal injury that originated in the 1990s. Essentially, Doctor alleges that Patient's claims are for a different manifestation of harm caused by a single legal injury, arguing that suit for any harm caused by this legal injury must be barred by the statute of limitations.

¶ 20 To support his argument, Doctor relies upon some of Expert's testimony, wherein Expert was critical of Doctor's failure to remove the scar tissue capsule and encapsulized silicone during the 1995 surgery. Doctor characterizes Expert's criticism as proof that Patient's claims are for harm caused by the rupture of the silicone implant and removal of the residual silicone, which he alleges should result in her claims being barred by the statute of limitations.

¶ 21 Although Expert was critical of Doctor's failure to remove the scar tissue capsule and encapsulized silicone in 1995, Expert did not take the position that the presence of these materials caused Patient's infection.[4] Rather, Expert pointed to the fact that the scar tissue capsule and encapsulized silicone remained in Patient's left breast to explain the recurrence of Patient's infection and resulting implant extrusion. Further, Expert opined that the fact that Doctor did not perform a capsulectomy in 2000 was one of many ways that Doctor's treatment of Patient's infection fell below the applicable standard of care. Accordingly, Expert's testimony on this matter directly supported the basis of Patient's claims: Doctor failed to properly treat her infection in December 2000.[5]

¶ 22 Further, we disagree with Doctor's characterization of Patient's infection as being a subsequent harm caused by a single legal injury. Viewing all the evidence presented at summary judgment in the light most favorable to Patient, *see Harper v. Evans*, 2008 UT App 165, ¶ 7, 185 P.3d 573, Doctor's failure to treat Patient's infection is a separate legal injury that originated in December 2000. Patient's claims arise out of Doctor's negligent acts in failing to treat that infection. Many of the issues raised by Doctor on summary judgment presented "genuine issue[s of] material fact," and we cannot say as a matter of law that Patient's claims

**4.** The cause of the infection was disputed. And the consensus among the experts seems to be that the mere presence of residual silicone in the body is generally harmless.

**5.** We note that Expert's criticism of Doctor's failure to remove the scar tissue capsule and encapsulized silicone in 1995 was not presented to the jury at trial. In fact, the jury was instructed that it could not consider care Doctor had provided to Patient prior to December 2000 as part of Patient's claims for negligence.

are barred by the statute of limitations. *See* Utah R. Civ. P. 56(c).

¶ 23 We conclude that the trial court correctly determined that Patient's claims were not barred by the statute of limitations because Patient's claims arise out of Doctor's failure to properly treat her infection in December 2000. The one-action rule is inapplicable here because Patient's claims are for a legal injury that originated in December 2000. The discovery rule is similarly inapplicable because Patient filed her claims within two years of discovering her legal injury.

## B. Continuous Negligent Treatment Rule

¶ 24 Doctor next characterizes Patient's claims as asserting the continuous negligent treatment rule, again arguing that Patient's claims arise out of the ruptured silicone implant and subsequent removal of residual silicone. Doctor then argues that Patient has failed to properly plead the continuous negligent treatment rule in her complaint. "Under the continuous negligent treatment rule, where a patient is injured by a course of continuing negligent treatment by a health care provider, the cause of action does not accrue until the date of the final negligent act." *Harper*, 2008 UT App 165, ¶ 10, 185 P.3d 573; *see also Schuurman v. Shingleton*, 2001 UT 52, ¶ 20, 26 P.3d 227 ("Under the [continuous negligent treatment] rule, a course of treatment that is allegedly negligent 'constitutes a single cause of action, and as such, the statute of limitations [does] not begin to run until the completion of the act giving rise to the cause of action, i.e., the negligent course of treatment.'" (second alteration in original) (quoting *Collins v. Wilson*, 1999 UT 56, ¶ 11 n. 9, 984 P.2d 960)).

¶ 25 In challenging the adequacy of Patient's complaint, Doctor relies heavily on *Harper v. Evans*, 2008 UT App 165, 185 P.3d 573, wherein a plaintiff presented a continuous negligent treatment argument at summary judgment and on appeal but did not amend her complaint to reflect such a theory

for relief. *See id.* ¶¶ 9–14. This court declined to address plaintiff's continuous negligent treatment argument, concluding that "even under Utah's liberal notice pleading requirements," plaintiff's complaint did "not state a claim for relief for continuous negligent treatment" because she had only alleged negligence arising out of treatment occurring on two specific dates. *Id.* ¶¶ 13, 11. This court further reasoned that "[a] plaintiff cannot amend [a] complaint by raising novel claims or theories for recovery in a memorandum in opposition to a motion to dismiss or for summary judgment." *Id.* ¶ 14 (internal quotation marks omitted).

¶ 26 *Harper* is not, however, applicable to this case because Patient does not rely on the continuous negligent treatment rule.[6] Patient's claims arise out of Doctor's failure to properly treat her infection in December 2000. Plaintiff commenced this action within the two-year statute of limitations. Therefore, Patient does not need to rely on the continuous negligent treatment rule to extend the statutory period. And Doctor cannot invoke the continuous negligent treatment rule for Patient as a round-about way to render her action untimely.

## C. Sufficiency of Patient's Complaint

¶ 27 Doctor also argues that if Patient's complaint arises out of an infection, then her complaint is inadequate, being ambiguous even under Utah's liberal notice pleading standard. *See generally MBNA Am. Bank, N.A. v. Goodman*, 2006 UT App 276, ¶ 6, 140 P.3d 589 ("Under [Utah's] liberal standard of notice pleading, . . . . [t]he plaintiff must only give the defendant fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." (internal quotation marks omitted)). Patient pleaded in her complaint that Doctor "treated . . . abscesses [and] ulcers [Patient had developed] by removing [her] breast implants and implanting

6. To the extent Patient argued the continuous negligent treatment rule below, the argument was presented in the alternative. Patient's primary position has consistently been that her claims were not barred by the statute of limita-

tions because she alleged negligence arising in December 2000 from Doctor's failure to properly treat her infection. Accordingly, we decline to discuss whether the continuous negligent treatment rule may be applicable to Patient's claim.

new breast implants."[7] The use of the terms "abscesses and ulcers" to describe Patient's condition indicates that Patient's claims arise out of an infection and not a ruptured implant. Accordingly, we conclude that under Utah's liberal notice pleading standard, Patient's complaint was sufficient to give Doctor "fair notice of the nature and basis or grounds of the claim." *See id.*

## II. Special Verdict to Apportion Fault

■ ¶ 28 Doctor next claims that the trial court erred in denying his request for a special verdict form to apportion fault to the manufacturer of the silicone implants. Utah Code section 78B–5–819 provides, "The trial court may, and when requested by any party shall, direct the jury, if any, to find separate special verdicts determining the total amount of damages sustained and the percentage or proportion of fault attributable to [any person allowed under this section] for whom there is a factual and legal basis to allocate fault." Utah Code Ann. § 78B–5–819 (2008); *see also id.* § 78B–5–818(3) ("No defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributed to that defendant...."). Accordingly, to be entitled to a special verdict form to apportion fault to the implant manufacturer, Doctor must have provided the trial court with both a legal and factual basis for apportionment.

¶ 29 Throughout the course of the jury trial, the trial court considered Doctor's request for a special verdict form, carefully analyzing whether the evidence and theories presented provided "a factual and legal basis to allocate fault." *See id.* § 78B–5–819. After much discussion, the issue came down to whether Doctor could apportion fault to the implant manufacturer due to Patient's arguments concerning Doctor's failure to remove accessible residual silicone during the August 2001 surgery. Doctor argued that he should be allowed a special verdict form to apportion fault to the implant manufacturer, reasoning that the implant manufacturer was at fault for the presence of residual silicone because it distributed a defective implant that had ruptured and allowed silicone to leak into Patient's breast tissue. In response, Patient argued that in not taking the opportunity to remove accessible silicone in August 2001, Doctor had failed to take measures that would prevent Patient's infection from recurring because that silicone could provide a host for infection. In considering these arguments, the trial court recognized that all the experts had agreed that it would be impossible for anyone to remove all of the residual silicone and clarified that the issue was not that residual silicone was present in Patient's breast tissue but that Doctor had the *opportunity to remove some silicone but did not.* The trial court denied Doctor's request for a special verdict form to apportion fault to the implant manufacturer, reasoning that Patient's claims were not that it was Doctor's fault that the silicone was present in her breast tissue but that Doctor's failure to remove this accessible silicone in August 2001 was evidence of his failure to properly treat her infection.

¶ 30 On the facts presented, we conclude that the trial court correctly denied Doctor's request for a special verdict form. Patient's claims were narrowly tailored to allege negligence arising out of Doctor's failure to properly treat her infection. And one way in which Patient alleged Doctor was negligent in treating her infection was his failure to remove residual silicone and other materials that could provide a host for infection. Based on this legal theory and supporting evidence, there is no "factual and legal basis to allocate fault," *see id.,* to the implant manufacturer and, accordingly, the trial court was not required to submit a special verdict form to the jury.[8]

---

7. Further, in an interrogatory wherein Patient was asked by Doctor to "[d]escribe in detail the acts, omissions and conduct of [Doctor]" upon which her allegations were based, Patient responded, "[Doctor] breached the standard of care by not properly diagnosing and/or treating the severe infection [Patient] developed from her breast surgery."

8. We note that Doctor failed to prove at trial that the silicone implant was defective. Indeed, Doctor's own expert testified at trial that the average implant, whether saline or silicone, has a life expectancy of twelve to fifteen years. The fact that Patient's fourteen-year-old silicone implant ruptured does not establish that the implant was defective.

## CONCLUSION

¶ 31 We conclude that the trial court correctly denied Doctor's motion for summary judgment. Patient's malpractice claim arises out of Doctor's failure to properly treat her infection and was filed within the applicable statute of limitations. Thus, the discovery rule, the one-action rule, and the continuous negligent treatment rule do not apply to this case. Further, we conclude that the trial court correctly denied Doctor's motion for a special verdict form to apportion fault to the manufacturer of the silicone implant.

¶ 32 Accordingly, we affirm.

¶ 33 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and J. FREDERIC VOROS JR., Judge.

